## Sternklar v Sternklar-Worenklein

2024 NY Slip Op 32555(U)

July 23, 2024

Supreme Court, New York County

Docket Number: Index No. 651270/2021

Judge: Andrew Borrok

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 53

-----------------------------------------------------------------------------------X

SARAH STERNKLAR, INDIVIDUALLY AND
DERIVATIVELY ON BEHALF OF NOMINAL DEFENDANT
STERNKLAR FAMILY FOUNDATION, INC.,

|  |  |  |
|---|---|---|
| **INDEX NO.** | 651270/2021 |
| **MOTION DATE** | 03/19/2024 |
| **MOTION SEQ. NO.** | 011 |

Plaintiff,

- v -

CINDY STERNKLAR-WORENKLEIN, MARK
STERNKLAR, STERNKLAR FAMILY FOUNDATION, INC.,

**DECISION + ORDER ON
MOTION**

Defendant.

-----------------------------------------------------------------------------------X

HON. ANDREW BORROK:

The following e-filed documents, listed by NYSCEF document number (Motion 011) 264, 265, 266, 267, 268, 269, 270, 271, 272, 273, 275, 276, 277, 278, 279, 280, 281, 282, 283, 284, 285, 286, 287, 288, 289, 290, 291, 292, 293, 295, 296, 297, 298, 299, 300, 301, 302, 303, 304, 305, 306, 307, 308, 309, 310, 311, 312, 313, 314, 315

were read on this motion to/for            PARTIAL SUMMARY JUDGMENT        .

Upon the foregoing documents and for the reasons discussed on the record (*tr.* 7.23.24) and as

otherwise set forth below, Sarah Sternklar's motion for partial summary judgment for an

equitable accounting (third cause of action) of the Sternklar Family Foundation, Inc. (the

**Foundation**) and further relief that the Court deems just and proper is denied in part because

Sarah Sternklar does not have standing to bring an equitable accounting claim and it is otherwise

duplicative of her statutory accounting claim brought pursuant to New York Not-for-Profit

Corporation Law (**N-PCL**) § 720. Accordingly, the defendants' cross-motion for summary

judgment is granted solely to that extent.

The defendant's cross-motion however is otherwise denied. Both the defendants and Sarah

Sternklar seek an accounting pursuant to N-PCL § 720 (*i.e.,* Sarah Sternklar's fourth cause of

**651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 1 of 34**

1 of 34

action [NYSCEF Doc. No. 120, at ¶¶ 139-144] and the defendants' third counter-claim [NYSCEF Doc. No. 129, at ¶¶ 195-207]). As discussed below, dismissal of this statutory based claim is simply not appropriate on the record before the Court.[1]

For starters, the defendants are not correct that pursuant to N-PCL § 720a, they enjoy absolute immunity as unpaid directors where the record demonstrates substantial issues of fact as to whether they mismanaged the Foundations' affairs and wasted Foundation assets (N-PCL §§ 720[1][A] and [1][B]), concealed their alleged mismanagement and ultimately seemingly retaliated against Sarah Sternklar by removing her as a Director from the Foundation when recent revelations brought to light that her concerns were not "scurrilous" and were in fact correct. Under these circumstances, dismissal is not appropriate. N-PCL § 720 requires an accounting. To wit, N-PCL § 720a expressly provides that "[e]xcept as provided in sections seven hundred nineteen and seven hundred twenty of this chapter." Under N-PCL § 720, a director is specifically authorized by the statute to bring a lawsuit derivatively:

> (1) To compel the defendant to account for his official conduct in the following cases:
>
>> (A) The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.
>>
>> (B) The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.

---

[1] Indeed, although neither party moved for summary judgment in respect of their accounting claim brought pursuant to N-PCL § 720, it would seem that this is appropriate and that leave should be granted to both Sarah Sternklar and to the defendants to move by order to show cause in respect of their respective cause of action seeking such statutory based accounting claim.

**651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**         **Page 2 of 34**
**Motion No. 011**

(N-PCL § 720).[2]

The defendants are also incorrect that they can vote to remove Sarah Sternklar as a director of the Foundation so as to divest her of standing to bring her statutory accounting claim in retaliation for her questioning their otherwise potential neglect or failure to properly discharge their duties in the management and disposition of corporate assets committed to their charge leaving her with only the remedy of bringing her complaints to the New York Attorney General.[3]

At a minimum, and as discussed, there are issues of fact as to whether her removal was in retaliation to her uncovering certain alleged misconduct including, without limitation, as to the loss of the Foundations' tax status, the improper use of certain invalid powers of attorney, the clandestine concealment of certain Foundation accounts and certain demonstrably false statements, insulting and disparaging remarks made by Etan Mark, Cindy Sternkar-Worenklein's son, who was acting as her attorney and who otherwise indicated that she as a Director had no obligation to provide any information to her sister Sarah Sternklar, another Director.

---

[2] As discussed, it is equally puzzling why the defendants are of the view that they enjoy absolute immunity as unpaid directors but Sarah Sternklar who is also an unpaid director does not when both Sarah Sternklar and the defendants each allege basis for accounting under N-PCL § 720.

[3] The defendants contend that, on January 31, 2024, three years after Sarah Sternklar demanded an accounting in this lawsuit, they voted to remove her as a director of the Foundation pursuant to Section 228 of the Delaware General Corporation Law and the Foundation's Certificate of Incorporation and adduce a resolution to that effect (*see* NYSCEF Doc. No. 280). Although the defendants indicate that this was due to Sarah Sternklar's unauthorized withdrawals of Foundation funds, this appears to be false. It is undisputed that Sarah Sternklar, Cindy Sternklar-Worenklein and Mark Sternklar each had the right to direct 1/3 of the Foundation's charitable giving and the alleged unauthorized withdrawals at issue occurred on October 28, 2020, June 2, 2021, and May 10, 2023—between one to four years before Cindy Sternklar and Mark Sternklar allegedly voted to remove her as a Director. The vote occurred however to remove her after she uncovered that her previously dismissed allegation that the Foundation had lost its tax status and asked for back-up documents. Thus, the record evidence and emails seem to suggest that her removal was done in retaliation for Sarah Sternklar's questioning of the defendants' conduct (and the discovery that in fact she was right about her concerns) and that Mr. Mark had provided her with false information including as to the loss of tax status and whether Bank United had an account (discussed below).

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 3 of 34**

In this case, there are substantial issues of fact as to whether the defendants violated their duties as directors of the Foundation which caused waste or loss of the Foundation's funds in violation of N-PCL § 720. Although the parties have engaged in discovery during the pendency of this lawsuit, **they have also engaged in substantial time consuming good faith settlement negotiations and the record before the Court does not establish that Sarah Sternklar has already received or has access to all of the Foundation's financials such that an accounting would be superfluous as a matter of law** (cf. *First Equity Realty v The Harmony Group, II*, 2022 N.Y. Slip Op. 30674[U], 24 [N.Y. Sup Ct, New York County 2022]).[4] She has not received the "functional equivalent" of an accounting. Indeed, the record before the Court establishes the opposite. For years, Sarah Sternklar expressed concern that the Foundation lost its tax status and was provided with false assurances that her concerns were unfounded. Indeed, Cindy Sternklar-Worenklein's son and attorney, Mr. Mark, dismissed her concerns as part of her "habit of lodging scurrilous allegations," with what can kindly be described as open hostility and what appears at this stage to be zero diligence performed on behalf of her mother when he was representing her or when he was otherwise acting on her behalf and stiff-arming Sarah (*e.g.,* NYSCEF Doc. No. 314). It is undisputed that to this day, Sarah Sternklar has not received any of the Foundation's tax returns since 2018, and the defendants have not adduced any evidence suggesting she has received any tax returns between 2018 and 2023, including the time this dispute has been pending. **Mr. Mark also denied that the Foundation ever had an account with Bank United, but Sarah Sternklar adduces documentary evidence that a Foundation account did exist at one time** (*compare* NYSCEF Doc. No. 333, *with* NYSCEF Doc. Nos. 331-

---

[4] The procedural posture and record in *First Equity Realty* was very different. In that case and following trial, the Court (Cohen, J.) indicated that on a fully developed record that no accounting was appropriate at that time because there were no issues of fact that an accounting would resolve. As discussed in this Decision and Order, this record is very different in that there are a number of factual issues which a forensic accounting would in fact lay to rest.

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**                    **Page 4 of 34**
**Motion No. 011**

[* 4]                                                                                          4 of 34

332). It is unclear whether the account was ever used or for what purpose because the bank refused to talk to Sarah Sternklar during the pendency of the parties' multi-front dispute. This was however not a new allegation by her as Mr. Mark conceded (*tr.* 7.23.24). Additionally, and as discussed above, the siblings have engaged in good faith negotiations to try to globally resolve their pending litigations and disputes. As such, the failure to follow-up or make additional requests in the context of these settlement conversation can not serve to penalize Sarah Sternklar based on her good faith efforts at resolution. It also appears as though certain documents were filed pursuant to her father's power of attorney (Jack Sternklar) **after he was in fact deceased and that certain other transfers were authorized pursuant to knowingly fraudulent powers of attorney**. Sarah Sternklar raised these concerns regarding the defendants' conduct in regard to the Foundation, and its loss of tax-exempt status, over a period of years and was repeatedly told by the defendants, in effect, "you are wrong, trust us." Discovery has shown Sarah Sternklar's concerns to however have merit and to have been anything but "scurrilous." The defendants in their motion are once again telling Sarah Sternklar to "trust us" in connection with their provision of certain "tru-ups" provided to her without any back-up and as to whether certain accounts were ever in fact used (when the bank itself has blocked her access). When she demanded more information as to certain concerns that she has (and given the history involved), then, as noted above, they removed her as a director of the Foundation. Although the defendants say that this was in regard to certain unauthorized allocations by her, the record does not appear to support such assertions because such alleged unauthorized allocations by Sarah Sternklar allegedly occurred years ago and were known to the defendants long before they voted her out. The timing of her removal coincides with Mr. Mark's admission that his prior representations were in fact not true (the removal is conveyed in the same email). Given the timing, the sum and

**651270/2021  STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**                    **Page 5 of 34**
**Motion No.  011**

5 of 34

[* 5]

substance (and tone) of Mr. Mark's correspondence to Jeremy Shockett, Sarah Sternklar's attorney, what appears to be more the case, is her explanation that this was retaliatory for her questioning of certain allocations made by her sibling defendants and her beginning to uncover the extent of the false information she was given over many years and the extent to which records have been kept from her.

As discussed above, lastly, the Court notes that the defendants in this case have brought a counterclaim for an accounting pursuant to N-PCL § 720, ironically, when they themselves have performed certain tru-ups. Putting aside that the "what's good for me but not good for thee" position is wholly untenable, the fact that both Sarah Sternklar and the defendants seek a forensic accounting highlights why such accounting is appropriate in this case and why dismissal of her cause of action brought pursuant to N-PCL § 720 for an accounting (fourth cause of action) is inappropriate.

### The Relevant Facts and Circumstances

By way of background, in the Second Amended Complaint (**SAC**), Sarah Sternklar brought four causes of action. The first and second were related to CISAM, LLC – declaratory judgment (first) and revocation of her withdrawal (second) as to her membership interest in CISAM, LLC. The third and the fourth were for an equitable accounting (third) and statutory accounting pursuant to N-PCL § 720 (fourth) related to certain allegations of mismanagement and waste with respect to the Foundation. Previously, the Court dismissed the causes of action related to membership in CISAM, LLC (*see* NYSCEF Doc. No. 259).

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 6 of 34**

6 of 34

Now, Sarah Sternklar moves for summary judgment on her equitable accounting (third) cause of action, and the defendants cross-move for summary judgment to dismiss both Sarah Sternklar's equitable accounting claim (third) cause of action and her cause of action (fourth) for an accounting pursuant to N-PCL § 720.

It is undisputed that Sarah Sternklar and her siblings, Mark Sternklar and Cindy Sternklar-Worenklein, are unpaid Directors of the Foundation. In the SAC, Sarah alleges:

## II. THE FOUNDATION

### A. The Foundation and the Operating Documents

73. The Foundation was incorporated on or about July 1, 1980 as a Delaware exempt corporation. Its name was changed from Bezalel Art Foundation, Inc. to the Sternklar Family Foundation, Inc. in 1987.

74. The Foundation conducts charitable activities in New York, including donations to tax-exempt organizations, and therefore is governed by the New York Not-for-Profit Corporations Law.

75. Section 3 of the Foundation's Certificate of Incorporation provides that the purpose of the Foundation is, inter alia, to "operate exclusively for religious, charitable, scientific, literary and/or educational purposes in such manner that no part of its net income, net earnings and/or property shall inure to the benefit of any private member and/or individual . . ."

76. Section 8 of the Foundation's Certificate of Incorporation provides that the Foundation shall be governed by a board of directors, who act through majority vote.

77. Section 8 of the Foundation's Certificate of Incorporation provides for two classes of members, voting and non-voting.

78. Section 10 of the Foundation's Certificate of Incorporation states:

So long as the corporation is a private foundation defined in Section 509(a) of the Internal Revenue Code of 1954, or corresponding provisions of any subsequent Federal tax laws, the corporation:

(a) shall distribute its income for each taxable year at such time and in such manner as not to become subject to the tax on undistributed income imposed by Section

**651270/2021  STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 7 of 34**

4942 of the Internal Revenue Code of 1954, or corresponding provisions of any subsequent Federal tax laws; or expand its income consistent with Section 4943(j)(3) (relating to private operating foundations), it applicable;

(b) shall not engage in any act of self-dealing as defined in Section 4941(d) of the Internal Revenue Code of 1954, or corresponding provisions of any subsequent Federal tax laws;

(c) shall not retain any excess business holdings as defined in Section 4943(c) of the Internal Revenue Code of 1954, or corresponding provision of any subsequent Federal tax laws;

(d) shall not make any investments in such manner as to subject it to tax under Section 4944 of the Internal Revenue code of 1954, or corresponding provisions of any subsequent Federal tax laws;

(e) shall not make any taxable expenditures as defined in Section 4945(d) of the Internal Revenue Codes of 1954, or corresponding provisions of any subsequent Federal tax laws.

79. Sarah, Cindy, and Mark are the current directors of the Foundation.

80. The directors agreed that Sarah, Cindy, and Mark would each be entitled to direct the charitable donation of a pro rata share of the aggregate amount of Foundation funds determined by the directors to be available for donation to recognized charities of each director's choosing.

81. Pursuant to New York Not-For-Profit Corporation Law §§ 514 and 717, the directors have an obligation to discharge their duties in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances.

82. Defendants have used their position as majority directors to abuse Sarah, strip her of her rights, and prevent her from fulfilling the Foundation's charitable purpose.

**B. The Forgery of Jack's Signature on the Foundation's Tax Filings and its Loss of Tax-Exempt Status Due to Late Filings**

83. Defendants engaged Adelsberg to prepare and file all required tax documents for the Foundation, but failed to ensure that he timely and properly made the Foundation's tax filings, to its detriment.

84. Adelsberg is a certified public accountant and a member of several professional organizations, including, the American Institute of Certified Public Accountants.

85. On April 3, 2017, Adelsberg belatedly filed a CHAR500 for the Foundation for the fiscal year ending June 30, 2014 ("2013 Tax Filing"), and another CHAR500 for the

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**          **Page 8 of 34**
**Motion No.  011**

fiscal year ending June 30, 2015 ("2014 Tax Filing"), with the New York State Office of the Attorney General Charities Bureau.

86. The late 2013 and 2014 Tax Filings were purportedly signed on March 30, 2017 by Jack as president of the Foundation. However, as Defendants well knew, their father Jack had died nearly two years earlier.

87. Adelsberg filed the 2013 and 2014 Tax Filings with Jack's forged signature at the direction or with the knowledge of Defendants.

88. The Foundation's tax-exempt status excused it from paying Federal and State income tax, increasing Sarah's one-third share of the funds generated by the Foundation which was to be made available to Sarah for charitable donations of her choosing.

89. The Foundation is required to make timely annual tax filings with the Internal Revenue Service to maintain its tax-exempt status.

90. Upon information and belief, Adelsberg failed to properly and timely make such filings for three consecutive years.

91. As a result, on November 15, 2016, the Foundation's tax-exempt status was revoked (see, https://apps.irs.gov/app/eos/detailsPage?ein=133041079&name=STERNKLAR%20 FAMILY%20FOUNDATION%20INC%20&city=NEW%20YORK&state=NY&country Abbr=US&dba=&ty pe=REVOCATION&orgTags=REVOCATION).

92. Defendants' failure to timely file tax information for the Foundation caused its charter to become inoperative and void, and was in contravention of the Foundation's certificate of incorporation.

93. Sarah advised counsel for Defendants, Etan Mark ("Etan"), that the Foundation had lost its tax-exempt status, which would have a detrimental effect on the Foundation.

94. Etan, on behalf of Defendants, repeatedly denied that the Foundation lost its tax-exempt status, despite this being evident on the IRS website, and demanded Sarah to stop asking about the issue.

95. In or around March 2018, Mark, purportedly as an "authorized officer" of the Foundation," submitted a Certificate for Revival of Charter with the State of Delaware. In this certificate, Mark acknowledged that the Foundation's charter had become inoperative and void due to failure to timely file Delaware franchise tax reports.

96. The wrongful acts and neglect of Defendants have caused the Foundation and Sarah to incur unnecessary potential tax liability.

97. Notwithstanding Adelsberg's mismanagement of the Foundation's tax filings, upon information and belief, Defendants caused the Foundation to continue paying Adelsberg's professional fees in excess of $23,000.

**C. Adelsberg Improperly Receives $1,000,000 from the Foundation**

98. On or about December 23, 2016, $1,000,000 from a Foundation account was wired to the Samuel S. Adelsberg Foundation, which is controlled by Adelsberg.

99. Adelsberg requested this transfer to his foundation as a partial payment for work unrelated to the Foundation.

100. Such a payment of unrelated professional fees by the Foundation could threaten its tax-exempt status and was improper.

101. Approximately five months later, in or about May 2017, Adelsberg returned the improperly transferred funds to the Foundation.

102. When Sarah inquired about the improperly transferred funds to Adelsberg, Etan demanded Sarah drop the matter.

103. Notwithstanding Adelsberg's malfeasance, Defendants caused the Foundation to pay Adelsberg $6,000 in May 2017.

**D. Defendants Refuse to Release Sarah's Charitable Share**

104. Sarah is an active donor to various charities, including Cornell Hillel and Tikkun Olam Makers, who rely on her annual donations to fund their charitable endeavors.

105. On September 2, 2020, Etan Mark told Sarah that the Foundation is holding "$939,673.25 for [Sarah] to donate as she wishes."

106. However, on October 23, 2020, Mark Sternklar, with Cindy's concurrence, refused Sarah access to such funds, preventing her from making charitable donations.

107. Defendants' refusal to release to Sarah her charitable share frustrates the charitable purpose of the Foundation and violates the three directors' agreement that each would have discretion to allocate one-third of the Foundation funds available for charitable donation. E. Cindy Takes Improper Control Over Foundation Donations

108. The Foundation routinely uses the Jewish Communal Fund ("JCF"), a donor-advised fund, as a vehicle to manage and make charitable donations. The Foundation has maintained an account with JCF to hold funds to be used for charitable purposes at the Foundation's election.

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**      **Page 10 of 34**
**Motion No.  011**

10 of 34

109. Upon information and belief, when Jack was alive, he was the sole signatory on the Foundation's JCF account.

110. Upon information and belief, in May 2016, well after Jack's death, Cindy gained sole control over the Foundation's JCF account by submitting to JCF a power of attorney purportedly signed by Jack in 2011 granting Cindy power to act for him ("POA").

111. Upon information and belief, Jack's signature on the POA was forged, and Cindy knew this.

112. The POA was not effective after Jack's death, or before his death to the extent Jack's signature was forged.

113. Upon information and belief, Cindy improperly used the POA to persuade JCF that she was the sole head of the Foundation and sole signatory with access to the JCF account holding approximately $500,000 in charitable funds donated by the Foundation as of early 2017.

114. Between September and December of 2017, Cindy used her control over the JCF account to direct a donation of $200,000 to her daughter's school, Westchester Hebrew High School in Mamaroneck, New York, where Cindy served as the board president, her husband Jay Worenklein served on the Finance Committee, and for which they were both honored at the school's annual fundraising dinner on February 11, 2018. F. Defendants Withhold Information from Sarah

115. Since 2018, Sarah has repeatedly asked Adelsberg and Defendants to provide an accounting and access to the books and records of the Foundation, to no avail. Sarah therefore has no knowledge as to how Foundation funds are being used.

116. Sarah is entitled to and requires this information to plan her donations and to satisfy herself that Foundation assets have been and are being properly preserved and applied.

117. As a director of the Foundation, Sarah is entitled to review the Foundation's books and records.

118. In May 2020 (as well as before and after), Sarah asked Adelsberg for information regarding a true-up of Foundation distributions to the respective directors for their charitable donations. Adelsberg refused to comply.

119. In October 2020, Sarah repeated this request to Defendants, who also refused to comply.

120. Upon information and belief, in addition to the foregoing, Defendants have used and continue to use Foundation money for non-charitable purposes including, but not limited to, funding the Yaakov and Leah Foundation which was created by Defendants and is not recognized as a charitable tax-exempt entity by the IRS.

**651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY** **Page 11 of 34**
**Motion No. 011**

11 of 34

(NYSCEF Doc. No. 120, at ¶¶ 73-120 [bolding in original]).

In her third cause of action, Sarah Sternklar seeks an equitable accounting of the Foundation:

132. The preceding allegations are incorporated.

133. Defendants, as directors, owed Sarah and the Foundation fiduciary duties to act in good faith, to diligently and fairly administer the Foundation's affairs, and to disclose all material facts to Sarah.

134. In violation of their fiduciary and statutory duties, Defendants repeatedly refused Sarah's requests for access to (1) the Foundation's books, records and information necessary for her to protect her interest as a director of the Foundation and (2) Foundation funds for charitable donations designated by Sarah.

135. Defendants have also failed to administer the Foundation's affairs diligently, carefully and honestly, and have wasted and squandered the Foundation's assets, to its and Sarah's detriment.

136. Given Defendants' exclusion of Sarah from access to information about the Foundation's affairs and participation in its management, Sarah has no adequate remedy at law.

137. Damages arising from the Sternklar Defendants' misconduct cannot be ascertained except through an accounting.

138. Defendants should be ordered to account to Sarah for all the affairs of the Foundation, including its receipts, expenses and disbursements, any costs associated with the foregoing should be borne solely by Defendants, and judgment should be entered against Defendants in an amount to be determined at trial.

(*id.*, at ¶¶ 132-138).

In her fourth cause of action, Sarah Sternklar seeks an accounting pursuant to N-PCL § 720:

139. The preceding allegations are incorporated.

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 12 of 34**

12 of 34

[* 12]

140. Pursuant to NPCL § 720, Sarah is entitled as a director of the Foundation to sue Defendants, as directors, to account to the Foundation with respect to their waste of Foundation assets, failure to perform, and mismanagement of its affairs.

141. Defendants should be ordered to account for the misappropriation of Foundation assets and the mismanagement of its affairs and to reimburse the Foundation in an amount to be determined.

142. Adelsberg, at the direction of Defendants, acts as the Foundation's financial advisor and accountant with a role in managing the assets and bank accounts of the Foundation, and is therefore a "key person" pursuant to NPCL § 102(a)(25).

143. Defendants should be ordered to account for Adelsberg's wrongful acts, including his failure to timely file proper tax returns and his misappropriation of $1 million of Foundation assets, and to reimburse the Foundation in an amount to be determined.

144. No prior demand has been made on the Foundation to bring this claim, as it would be futile given Defendants' exercise of control over the Foundation and their involvement in the alleged wrongdoing.

(*id.*, at ¶¶ 139-144).

This action has been pending for three years. Although the parties have had the opportunity to conduct discovery, it is clear from the record before the Court that neither side can be charged with the failure to make or follow-up on specific discovery requests to make an accounting superfluous **because of the good faith settlement negotiations that the siblings have been engaged in for years in the hope of globally resolving their disputes**. Now, both sides claim each has knowledge and access to the Foundation's financial information and back-up that the other side lacks and both want an accounting pursuant to N-PCL § 720. As discussed above, in what appears to be retaliation, now that it is clear that the defendants can not whisk away Sarah Sternklar's concerns as invalid, they have attempted to remove her as a Director of the Foundation allegedly because of certain transfers that happened years ago and because they say her access to certain information prevented them from fixing the issues. The record however is

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 13 of 34**

13 of 34

[* 13]

bereft of any specific process by the defendants vetting all appropriate concerns including soliciting her assistance as a Director in fixing the tax status of the Foundation following a forensic accounting (as she was entitled to) or her preventing them from doing that which supports removal at that time.

In her motion for summary judgment, and as discussed below, Sarah Sternklar argues she is entitled to an award of summary judgment on her equitable accounting (third) cause of action because the defendants, as Directors of the Foundation, owe the Foundation *and Sarah* fiduciary duties, and thus Sarah Sternklar has an absolute right to an accounting and standing to bring an accounting claim. Sarah Sternklar contends in her papers opposing the defendants' cross-motion that she lacks full access to the Foundation's financials such that an accounting is necessary. In addition, Sarah Sternklar alleges various acts of mismanagement and misappropriation of Foundation funds by the defendants, and that an accounting will uncover monies lost or wasted by these acts, and thus due to the Foundation, including by way of example, monies expended that should not have had to have been expended in respect of the loss of tax status. Finally, Sarah Sternklar indicates that when she previously brought the loss of tax status to the defendants' attention, she was stiff armed by Mr. Mark, Cindy Sternklar-Worenklein's son, and told that she was mistaken. Subsequently, and as discussed above, she argues that when it was discovered that her concerns were in fact valid, the defendants retaliated against her and caused her removal as a director of the Foundation and otherwise frustrated her parent's bequest desires that she have the right to donate 1/3 of the Foundation's money for charitable purposes.

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 14 of 34**

14 of 34

In particular, as set forth above, in the SAC Sarah Sternklar alleges that the defendants (i) caused the Foundation to lose its tax-exempt status by failing to file all required tax returns, despite having hired one Mr. Steven Adelsberg to prepare and file the Foundation's taxes, and later misrepresented to Sarah that the Foundation retained its tax-exempt status, thus causing the Foundation to "incur unnecessary potential tax liability" and to pay Mr. Adelsberg for services apparently not rendered (NYSCEF Doc. No. 120, at ¶¶ 83-97), (ii) caused the Foundation to transfer $1,000,000 of Foundation funds to Mr. Adelsberg as a purported charitable donation, when it was in fact a fee for his services in acting as Executor of their parents' estate, which sum Sarah Sternklar admits was later returned to the Foundation (*id.*, at ¶¶ 98-103), (iii) blocked Sarah Sternklar's ability to direct her one-third share of the Foundation's funds to charities of her choosing pursuant to an agreed-upon arrangement between the siblings as to the direction of the Foundation's funds (*id.*, at ¶¶ 104-107), (iv) improperly transferred some $80,000 of funds into the Foundation from a bank account belonging to the siblings' mother, Lila Sternklar, pursuant to a forged power attorney purportedly signed by Lila, (v) transferred in a sum of $100,000 into the Foundation in September 2023, without explaining to Sarah where those funds came from or if they were distributed and how, and that (vi) Cindy Sternklar-Worenklein in particular improperly took control over the Foundation's funds pursuant to a forged power of attorney purportedly signed by Jack Sternklar, and used that control to direct a $200,000 donation to her daughter's school, which amount may, as alleged, have included tuition payments rather than charitable donations (NYSCEF Doc. No. 120, at ¶¶ 108-114).

There is no issue of fact that the Foundation lost its tax-exempt status as a result of the failure to timely file tax returns, as acknowledged by the defendants' counsel, Mr. Mark, in a February

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 15 of 34**

15 of 34

2024 email adduced by Sarah Sternklar in support of her motion. In fact, Mr. Mark seems to

disparage Sarah Sternklar and acknowledge that he never did any independent investigation of

Sarah Sternklar's concerns and instead ignored them because she had a "habit of lodging

scurrilous allegations":

Jeremy,

I write regarding the Sternklar Family Foundation (the "Foundation") and your client, Sarah Sternklar ("Sarah").

***Some years ago, Sarah claimed that the Foundation had lost its tax-exempt status. As Sarah has a habit of lodging scurrilous allegations, I thought she was mistaken.*** Indeed, Steven Adelsberg's testimony was consistent with my understanding that the Foundation still had retained its status as a tax-exempt organization. ***Only recently, at Mr. Kirschner's deposition, did I learn that the Foundation had, in fact, lost its tax-exempt status.*** We also learned the reason: the Foundation cannot file tax returns. And the reason that the Foundation cannot file tax returns is because it does not have access to the bank statements that we have repeatedly demanded, and to which only your client has access.

It seems the reason Sarah has refused to produce the bank statements is because she perceives it as leverage in the litigation. Specifically, she can continue to make it impossible for the Foundation to restore its status while maintaining her position that the Foundation and its directors (other than her, of course) failed in their responsibilities as directors to insure the continued maintenance of the Foundation's status.

All of the foregoing is particularly absurd because we have repeatedly advised you that we are prepared to disburse to Sarah her share of the balance of the Foundation account – if only you will tell us what that amount is – so that the Foundation can move past this dispute that Sarah has manufactured. Your client has all of the relevant bank account statements, including statements from the Jewish Communal Fund. And your client has exclusive access to the Citizen's Bank accounts and statements. We have also provided what we understand to be the most recent (but perhaps not complete) Foundation true-up as recently as May 25, 2023.

As you are also aware, on at least one occasion, Sarah has unilaterally – and without any authority – withdrawn funds from the Foundation's bank accounts. Until very recently, we thought this only happened once (on September 25, 2019 when Sarah withdrew $27,650 from the Foundation's Capital One account), but we have recently learned that it may have happened on multiple occasions.

Because Sarah refuses to provide the necessary bank account information, and due to her prior misconduct concerning her improper withdrawals from Foundation accounts, she

cannot remain as a director or officer of the Foundation. The members of the Foundation are authorized to remove a director with or without cause. Attached is consent of members of the Foundation effectuating Sarah's removal from the Board. Also attached is a consent of the directors of the Foundation effecting Sarah's removal as an officer of the Foundation. We will also be sending a separate link to all relevant bank documents with respect to the Foundation that we have in our custody. The Foundation has only been able to gain access to the Citizen's Bank statements this week and has already begun the process of the Foundation's reinstatement as a tax-exempt organization.

Please advise your client that she no longer has any authority to contact any financial institution on behalf of the Foundation, and should she do so, such contact will be considered improper interference with the Foundation's ability to conduct business and interference with the Foundation's business relationships.

As I have repeatedly stated, my clients remain willing to disburse the funds that Sarah believes the Foundation is holding that belong to her to finally wind this matter down. She simply needs to tell us what that amount is and the basis.

Thanks.
Etan Mark

(NYSCEF Doc. No. 314 [emphasis added]).

**This admission came after some four years of denials that the Foundation had lost its tax-exempt status**, as illustrated by a February 27, 2020, from Mr. Mark to Sarah Sternklar in which Mr. Mark said:

The tax returns for the Foundation have been filed every year.

***The Foundation is (still) tax exempt***. The status of the Foundation from the Sec of State is irrelevant. (I assume that's where you got your info.)

(NYSCEF Doc. No. 307 [emphasis added]). In Mr. Mark's February 2024 email, the Court notes at this time (and after four years of denying that Sarah Sternklar was in fact correct), that, Mr. Mark blamed Sarah Sternklar for the loss of tax status. And significantly, it is at this time, that rather than apologizing to Sarah Sternklar for their dismissal and lack of investigation of her otherwise valid concerns (as one would expect), they blamed her and removed her as a Director.

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**                                    **Page 17 of 34**
**Motion No.  011**

If in fact they truly recently learned that the Foundation lost its tax status as they then asserted and that they needed certain statements that they then alleged that Sarah had to fix the tax issue, at a minimum, one would expect them to simply ask for her assistance in fixing the problem – not remove her as a Director.

In an email dated August 9, 2020, Mr. Mark also denied the existence of any account at Bank United, disclaimed any responsibility to share the Foundation's financials with Sarah Sternklar and otherwise again demonstrated open hostility towards Sarah Sternklar:

> Sarah,
>
> ***I am responding on behalf of my mom (she is not going to be responding to your disjointed and baseless accusations** as she has more important matters to deal with**). I'm not aware of any legal obligation my mom has to provide you any of the documents you are now demanding and we're not going to hunt them down for you.*** Mom was appointed manager of the JCF fund account pursuant to a POA that grandpa signed in 2011. ***There was never an account at United.*** It was always at Signature.
>
> In total, both my mom and Mark withdrew less than their share (less than a 1/3, although Mark has taken out about $100K more than my mom) of Foundation funds to fund their own foundations (the Yaacov and Leah Foundation). For all we know, what is left of your third is still sitting in the Family Foundation account, although material amounts in that account are still appropriately allocated to Mark and mom. If you have any documents supporting anything you are saying those would be helpful to see so we can try to be more responsive. ***It seems you have your facts very confused...again.***
>
> Thanks,
>
> Etan

(NYSCEF Doc. No. 333 [emphasis added]). Putting all else aside, the problem is that Mr. Mark's statement was false. There was a Foundation account at Bank United (NYSCEF Doc. Nos. 331-332) and the Directors did have legal obligations to work together to provide each other with all necessary information. As to Bank United, although Mr. Mark now indicates that

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 18 of 34**

18 of 34

accounts were opened but never used, the record is simply not developed as to the amount of activity at Bank United. Bank United refused to speak to Sarah Sternklar (NYSCEF Doc. No. 332) and Sarah Sternklar need not take Mr. Mark's word for it under the circumstances. It was also wrong to ask Sarah Sternklar to produce documents supporting her allegations while misstating whether such documents existed and indicating that she has her "facts very confused...again." Nothing in the record indicates that Sarah Sternklar ever had access to this account or that she was confused in the first place. Indeed, if anyone seems confused on this record, it was Mr. Mark.

In additional support of her motion, Sarah Sternklar also adduces (i) emails and other documentation of the $1,000,000 transfer to Mr. Adelsberg, which Sarah Sternklar admits was later returned (NYSCEF Doc Nos. 309, 310), (ii) the allegedly fraudulent powers of attorney for Jack and Lila Sternklar, together with various emails and documentation which Sarah Sternklar contends indicate that Jack Sternklar was deceased at the time he purportedly signed his power of attorney and that the defendants changed the dates on a previous power of attorney signed by Jack Sternklar, and that Lila Sternklar was in the late stages of Alzheimer's at the time she purportedly signed her power of attorney (NYSCEF Doc. Nos. 300-305), and (iii) documentation of the $80,000 and $100,000 contributions to the Foundation (NYSCEF Doc. Nos. 306, 308). Sarah Sternklar contends she has no documentation that would demonstrate the $200,000 donation to the school attended by Cindy Sternklar-Worenklein's daughter was a true charitable donation and did not include tuition payments (**which would be a misappropriation of Foundation funds**). Sarah Sternklar also contends that she has never been given some of the Foundation's bank account statements or various other financial documents not fully specified by

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**          **Page 19 of 34**
**Motion No.  011**

19 of 34

her, including documents that would support the defendants' contention that Sarah's one-third share of the Foundation's funds which she is permitted to direct truly amounts to the $939,673.25 amount claimed by defendants, or the source documents used in calculating the "true-up" document the defendants shared with Sarah Sternklar and adduce in support of their cross-motion (NYSCEF Doc. No. 291) without any such back-up.

In her affirmation, Sarah Sternklar claims that the defendants have not shared with her the source and back-up documentation of the $100,000 contribution to the Foundation:

> 19. According to Etan Mark, three checks totaling $100,000 came into the Foundation in September 2013. To this day, however, Cindy and Mark have blocked my share of those funds too, and h*ave refused to supply me with any documentation of: where those funds came from, whether my siblings received their distributions of those funds, and whether their distributions included my share*.

(NYSCEF Doc. No. 299, at ¶ 19).

Cindy Sternklar-Worenklein's affirmation does not do this. In her affirmation, Cindy Sternklar-Worensklein's attempts to explain that these funds as having come from an entity that is owned in part by the Foundation. But she fails to supply any back-up and simply expects Sarah Sternklar to trust her as to the amount:

> 7. In addition to the information contained on that spreadsheet, in December 2023, I deposited three checks totaling $100,000 into the Foundation's Capital One money market account referenced on Exhibit A representing distributions from 356-358 SJP, LLC, which is an entity which is owned (50%) by the Foundation It is my understanding that my counsel asked Sarah's attorney (repeatedly) whether Sarah would consent to the deposit of the $100,000 to an account which would then be disbursed equally between the three beneficiaries to charities of their choice, and that Sarah would agree to refrain from unilaterally withdrawing the funds. But her counsel would not provide these assurances. Because Sarah has a history of improperly withdrawing funds from the Foundation bank account., including unauthorized unilateral withdrawals of

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**   **Page 20 of 34**
**Motion No. 011**

20 of 34

> $221,000 on October 28, 2020, $24,000 on June 2, 2021 and $57,780.97 on May 10, 2023, *I immediately deposited these funds into The Yaacov & Leah Foundation account which my brother Mark and I manage.*

(NYSCEF Doc. No. 290, at ¶ 7 [emphasis added]). In fact, the Yaacov and & Leah Foundation accounts appear to be allocations to Cindy Sternklar-Worenklein and Mark Sternklar charity accounts and not Sarah Sternklar's accounts. In other words, Cindy Sternklar-Worenklein's affidavit seems to suggest that allocation was made to Cindy Sternklar-Worenklein and Mark Sternklar but not to Sarah Sternklar. Cindy Sternklar-Worenkelin's affidavit also appears to be at odds with an email from Mr. Mark where he indicates that the $100,000 at issue would be allocated on a 1/3 basis to each of the siblings so long as Sarah Sternklar promised not to take it all out of the account:

> We have 3 checks totaling $100K for deposit into the Foundation account. We would like to deposit the checks into the account and disburse the $100K equally among the three siblings. Please confirm that we may proceed in that way (and your client will not make any unilateral withdrawals from the account).
>
> Thanks,
> Etan

(NYSCEF Doc. No. 308). These types of factual discrepancies (including as to alleged improper allocations by Sarah Sternklar) also highlight the need for an accounting.

As noted above, the defendants oppose Sarah Sternklar's motion on her third cause of action for an equitable accounting and cross-move for an award of summary judgment dismissing Sarah's third and fourth causes of action. In their motion, the defendants argue that (i) both under Delaware and New York law, Sarah Sternklar lacks standing to bring her equitable accounting claim (third cause of action) and as such dismissal is required or dismissal is required because it

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 21 of 34**

21 of 34

is otherwise duplicative of her statutory based cause of action for accounting (fourth cause of action), (ii) Sarah's fourth cause of action for an accounting pursuant to N-PCL § 720 is dismissible on the ground that Mark Sternklar and Cindy Sternklar-Worenklein, as unpaid directors, are protected from liability by the qualified immunity granted to unpaid directors under N-PCL § 720(a), and (iii) that an accounting is not necessary because Sarah Sternklar has access to all of the Foundation's financial information. These arguments fail.

The Court notes that, while not directly at issue on this motion, the defendants bring a counterclaim against Sarah Sternklar for an accounting pursuant to N-PCL § 720, based on allegations that Sarah without proper authorization caused the Foundation to sell assets from its HSBC brokerage account that would have appreciated in value, causing the Foundation $200,000 in damages for which Sarah Sternklar should be made to pay compensatory damages for pursuant to N-PCL § 720:

195. The Foundation is a charitable not-for-profit corporation established by Jack and Lila Sternklar that conducts charitable activities in the State of New York. The Foundation was incorporated on or about July 1, 1980.

196. Sarah, Mark and Cindy are each directors of the Foundation.

197. Sarah, as a director of the Foundation, owed fiduciary duties to the Foundation pursuant to New York Not-for-Profit Corporation Law ("NPCL") § 717.

198. Upon information and belief, at all relevant times the Foundation had a brokerage account at HSBC (the "Brokerage Account").

199. Upon information and belief, at all relevant times Sarah has been and is the sole director of the Foundation with access to the Brokerage Account.

200. The Defendants do not have access to the Brokerage Account.

201. Upon information and belief, in or about early 2021, Sarah used her position as director of the Foundation to cause the Foundation to sell and convert to

651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY
Motion No. 011

Page 22 of 34

cash all the non-cash assets, including publicly traded securities, in the Brokerage Account.

202. Sarah did not obtain the consent or authorization of the other directors of the Foundation before causing the Foundation to liquidate assets in the Brokerage Account.

203. Sarah knew or should have known that liquidating the assets in the Brokerage Account would cause the value of the account to suffer given improving market conditions at the time and for the reasonably foreseeable future.

204. But for Sarah's wrongful action in liquidating the assets in the Brokerage Account, the present value of the Brokerage Account would be substantially higher.

205. By reason of Sarah's wrongful action in liquidating the assets in the Brokerage Account, the Foundation has suffered losses believed to exceed $200,000.

206. Sarah wrongfully failed to discharge her duties as director of the Foundation with the degree of care, good faith, diligence, and loyalty required by causing the Foundation to liquidate all its non-cash assets in the Brokerage Account, including publicly traded securities.

207. By reason of the foregoing, pursuant to NPCL § 720, Sarah must be held to account for her neglect of, and failure to perform, her duties in the management and disposition of the Foundation's assets committed to her charge and for the loss and waste of the Foundation's assets due to her neglect of, or failure to perform, said duties.

(NYSCEF Doc. No. 129, at ¶¶ 195-207).

## Discussion

On a motion for summary judgment, the movant must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issue of fact (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]). Failure to make such a showing requires a denial of the motion, regardless of the sufficiency of the opposing papers (*id.*). Once this showing has been made, the burden shifts to the party opposing the

**651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 23 of 34**

23 of 34

[* 23]

motion to produce evidentiary proof in admissible form to establish the existence of material issues of fact requiring trial (*id.*).

### I. Sarah's Equitable Accounting (Third) Cause of Action is Dismissed because Sarah Lacks Standing

Sarah Sternklar lacks standing to bring an equitable accounting claim, either directly pursuant to her role as a Director of the Foundation, or derivatively on behalf of the Foundation.

Under New York law, a party seeking an equitable accounting must show "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal" (*Addax BV Geneva Branch v E. of New Jersey, Inc.*, 05 CIV. 9139 (JSR), 2007 WL 1321027, at *1 [SDNY May 4, 2007]).

Sarah Sternklar is, or was at all relevant times, a Director for the Foundation. In her third cause of action, Sarah Sternklar sues her siblings and fellow directors of the Foundation, Mark Sternklar and Cindy Sternklar-Worenklein, for an equitable accounting. Fellow directors of a corporation, however, do not owe fiduciary duties to one another, and a cause of action for an equitable accounting cannot be maintained in the absence of a fiduciary duty between the plaintiff and the defendants (*Royal Warwick S.A. v Hotel Representative, Inc.*, 106 AD3d 451, 452 [1st Dept 2013]). The Directors owe fiduciary duties to the Foundation and its shareholders, and Sarah Sternklar is not a shareholder. Thus, to the extent Sarah Sternklar's equitable accounting (third) cause of action is brought as a direct claim, it must be dismissed.

**651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 24 of 34**

24 of 34

[* 24]

Sarah Sternklar also lacks standing to bring a claim for an equitable accounting derivatively on behalf of the Foundation. The Foundation is a Delaware corporation, and thus Sarah's standing to bring a derivative suit must be determined according to the law of Delaware (*In re NASD Dispute Resolution*, 46 AD3d 294, 295 [1st Dept 2007] ["Whether the investors had standing to sue on behalf of the hedge fund, Olympus Partners, L.P., was to be determined by the law of Delaware, where the entity was organized"]; *see also CPF Acquisition Co., Inc. v CPF Acquisition Co.*, Inc., 255 AD2d 200 [1st Dept 1998]). Under Delaware law, however, directors of a corporation do not have standing to bring a derivative suit (*Schoon v Smith*, 953 A2d 196, 210 [Del 2008]). Thus, Sarah Sternklar's motion for summary judgment must be denied, and the defendants' cross-motion to dismiss Sarah Sternklar's equitable accounting (third) cause of action is granted.

Sarah Sternklar's argument that she has standing to bring her equitable accounting claim pursuant to N-PCL § 720 fails. This is not the claim asserted in the third cause of action. To be sure, Sarah Sternklar did bring a statutory based accounting claim pursuant to N-PCL § 720. That is her fourth cause of action discussed below. To the extent that she now argues that her equitable and not statutory based claim should not be dismissed pursuant to N-PCL § 720, the argument fails. Even if the claim were recast, dismissal would be required as it would be duplicative of the statutory accounting (fourth) cause of action.

Sarah Sternklar's third cause of action is not however ripe for dismissal because it impermissibly intermingles direct and derivative claims in the same cause of action (*cf. Barbour v Knecht*, 296 AD2d 218, 228 [1st Dept 2002]). Whether a claim is direct or derivative is turns "solely on the

**651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 25 of 34**

25 of 34

following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?" (*Zelouf v Zelouf*, 2013 N.Y. Slip Op. 33906[U] [N.Y. Sup Ct, New York County 2013], citing *Tooley v Donaldson, Lufkin & Jenrette, Inc.*, 845 A2d 1031, 1033 [Del 2004]). In *Zelouf*, a case involving the mismanagement and misappropriation of the funds of a family business, the Court found that the claims in that case did *not* involve a "confusing hodge-podge" of direct and derivative claims because, applying the above test, each individual cause of action was discernable as being either a direct or a derivative claim (*id.*, citing *Barbour*, 296 AD2d 218, at 228). The predicate facts for Sarah Sternklar's equitable accounting (third) cause of action also do not contain a hodge-podge. Her claims asserted are readily identified and separable. For example, Sarah Sternklar's claim that she was not allowed to allocate her one-third share of Foundation funds as she chose is personal to her. A derivative claim on behalf of the Foundation requires some finding that the Foundation made a payment it should not have had to make or did not receive money that it should have received. This is not that.

As to the allegedly improper $1,000,000 transfer to Adelsberg, although this does not ultimately present a viable claim because (i) Sarah Sternklar signed off on the transaction (*see* NYSCEF Doc. No. 310), and because, as Sarah Sternklar admits, (ii) these funds were returned to the Foundation and that her signature on the wire instructions were not forged (NYSCEF Doc. No. 279, at 337:10-17), the claim would in fact be derivative

**651270/2021 STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 26 of 34**

26 of 34

[* 26]

Sarah Sternklar's claim regarding the $100,000 transfer and the $80,000 transfer from her mother Mrs. Lila Sternklar's bank account to the Foundation, also does not present an impermissible commingling problem. However, it does not to be a proper claim in this lawsuit. To wit, it appears that if there is a claim for the return of these monies, it is not a direct claim of Sarah Sternklar's *or* derivative claim on behalf of the Foundation. It appears that any such claim should be asserted by the Estate of Lila Sternklar.

As to the recent $100,000 at issue now deposited in the Yaacov and Leah Foundation accounts, there are two concerns. One which appears to be a personal direct claim of Sarah Sternklar's— *i.e.*, that she be able to direct her one-third share of it. And, second, that the $100,000 the Foundation received is the total amount that it should have received. To the extent that this was transferred away from the Foundation to accounts that only Mark Sternklar and Cindy Sternklar-Worenstein control, this is a derivative claim.

As to Sarah Sternklar's allegations that the Foundation (i) paid more in taxes than they otherwise should have as a result of losing its tax-exempt status through the defendants' and violation of their duties as directors, (ii) paid fees to Mr. Adelsberg for work he did not do—*i.e.*, prepare and file the Foundation's tax returns, and (iii) may have been made to pay tuition to the school attended by Cindy Sternklar-Worenklein's daughter, these too would present derivative claims properly on behalf of the Foundation.

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 27 of 34**

Thus, Sarah Sternklar's equitable accounting (third) cause of action do not present a "confusing hodge-podge" of plaintiff's personal claims such that dismissal on those grounds is appropriate (*cf. Barbour v Knecht*, 296 AD2d 218, 228 [1st Dept 2002]).

### II.   *The Defendants' Motion to Dismiss Sarah Sternklar's Statutory N-PCL § 720 Accounting (Fourth) Cause of Action is Denied*

As a corporation conducting charitable activities in New York, the Foundation's activities are governed by the New York Not-for-Profit Corporation Law.  Mark Sternklar and Cindy Sternklar-Worenklein argue that, as unpaid directors of the Foundation, they fall within the protections of N-PCL § 720-a, which provides unpaid directors of certain charitable organizations with a qualified immunity to suits for damages, and thus are entitled to an award of summary judgment dismissing Sarah Sternklar's fourth cause of action for an accounting pursuant to N-PCL § 720:

> ***Except as provided in sections seven hundred nineteen and seven hundred twenty of this chapter***, and except any action or proceeding brought by the attorney general or, in the case of a charitable trust, an action or proceeding against a trustee brought by a beneficiary of such trust, ***no person serving without compensation as a director***, officer, key person or trustee of a corporation, association, organization or trust described in section 501(c)(3) of the United States internal revenue code shall be liable to any person other than such corporation, association, organization or trust based solely on his or her conduct in the execution of such office unless the conduct of such director, officer, key person or trustee with respect to the person asserting liability constituted gross negligence or was intended to cause the resulting harm to the person asserting such liability. For purposes of this section, such a director, officer, key person or trustee shall not be considered compensated solely by reason of payment of his or her actual expenses incurred in attending meetings or otherwise in the execution of such office.

(N-PCL § 720-a [emphasis added]).

Sarah Sternklar argues that Mark Sternklar and Cindy Sternklar-Worenklein are not entitled to the protections of § 720-a, however, because such protections do not apply to claims brought

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 28 of 34**

28 of 34

under sections "seven hundred nineteen and seven hundred twenty of this chapter." Sarah Sternklar argues that although the defendants may be liable under N-PCL § 719 (following an accounting), her fourth cause of action is brought pursuant to N-PCL § 720.

The Court notes N-PCL § 719 imposes liability on directors only in "certain cases" provided in that section:

(a) Directors of a corporation who vote for or concur in any of the following corporate actions shall be jointly and severally liable to the corporation for the benefit of its creditors or members or the ultimate beneficiaries of its activities, to the extent of any injury suffered by such persons, respectively, as a result of such action, or, if there be no creditors or members or ultimate beneficiaries so injured, to the corporation, to the extent of any injury suffered by the corporation as a result of such action:

   (1) The distribution of the corporation's cash or property to members, directors or officers, other than a distribution permitted under section 515 (Dividends prohibited; certain distributions of cash or property authorized).

   (2) The redemption of capital certificates, subvention certificates or bonds, to the extent such redemption is contrary to the provisions of section 502 (Member's capital contributions), section 504 (Subventions), or section 506 (Bonds and security interests).

   (3) The payment of a fixed or contingent periodic sum to the holders of subvention certificates or of interest to the holders or beneficiaries of bonds to the extent such payment is contrary to the provisions of section 504 or section 506.

   (4) The distribution of assets in violation of section 1002-a (Carrying out the plan of dissolution and distribution of assets) or without paying or adequately providing for all known liabilities of the corporation, excluding any claims not filed by creditors within the time limit set in a notice given to creditors under articles 10 (Non-judicial dissolution) or 11 (Judicial dissolution).

   (5) The making of any loan contrary to section 716 (Loans to directors and officers).

(N-PCL § 719[a][1]-[5]).

651270/2021  STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY
Motion No.  011

Page 29 of 34

29 of 34

Inasmuch as the accounting has not yet occurred, as of now it can not be said that there is no basis for liability under N-PCL § 719.

Under N-PCL § 720, however, a director may sue fellow directors derivatively on behalf of the corporation for mismanagement of the corporation's affairs and compel them to produce an accounting based on certain misconduct. As discussed above, Cindy Sternklar-Worenklein and Mark Sternklar's removal of Sarah Sternklar does not divest her of standing to bring her statutory claim as it appears to be retaliatory and to avoid having the accounting otherwise go forward notwithstanding recent revelations which otherwise substantiate Sarah Sternklar's years of allegations of misconduct which warrant an accounting pursuant to both N-PCL § 720(a)(1)(A) and (B):

(a) An action may be brought against one or more directors, officers, or key persons of a corporation to procure a judgment for the following relief:

(1) *To compel the defendant to account for his official conduct in the following cases:*

(A) *The neglect of, or failure to perform, or other violation of his duties in the management and disposition of corporate assets committed to his charge.*

(B) *The acquisition by himself, transfer to others, loss or waste of corporate assets due to any neglect of, or failure to perform, or other violation of his duties.*

(2) To set aside an unlawful conveyance, assignment or transfer of corporate assets, where the transferee knew of its unlawfulness.

(3) To enjoin a proposed unlawful conveyance, assignment or transfer of corporate assets, where there are reasonable grounds for belief that it will be made.

(b) An action may be brought for the relief provided in this section and in paragraph (a) of section 719 (Liabilities of directors in certain cases) by the attorney general, by the corporation, or, in the right of the corporation, by any of the following:

(1) A director or officer of the corporation.

**651270/2021  STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 30 of 34**

30 of 34

(N-PCL §§ 720[a]-[b] [emphasis added]).

As set forth above, the protections granted by N-PCL § 720-a expressly do not apply to claims brought pursuant to sections "seven hundred nineteen and seven hundred twenty of this chapter" (N-PCL § 720-a). Thus, Mark Sternklar and Cindy Sternklar-Worenklein's argument that as unpaid directors of the Foundation they fall within the protections of N-PCL § 720-a fails as to Sarah Sternklar's fourth cause of action. As discussed above, the Court notes that the defendants themselves bring a counterclaim against Sarah Sternklar for an accounting pursuant to N-PCL § 720, and their argument, if accepted, would require dismissal of this counterclaim because Sarah herself was also an unpaid director of the Foundation. Remarkably, as noted above, Mark Sternklar and Cindy Sternklar-Worenklein do not explain why, under the circumstances, they are entitled to immunity pursuant to N-PCL § 720(a) but Sarah Sternklar is not or why they are entitled to an accounting but she is not.

The defendants also contend that ordering an accounting is superfluous because Sarah Sternklar has already received or has access to all of the Foundation's financials. As discussed at oral argument (*tr.* 7.9.24 and 7.23.24), however, the record is clear that she has not been provided with appropriate back-up, has been denied access to bank account information, has not received tax returns from 2019 and 2023, apparently belatedly filed in 2024, or significant bodies of other information so that she can verify if the information on the tru-ups properly accounts for the Foundations assets / liabilities and cash flows. As discussed above, given the substantial good faith and prolonged settlement conversations it is inappropriate to penalize her as to information

**651270/2021  STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 31 of 34**

31 of 34

she could not know existed (because she was told it did not exist) or otherwise did not make follow-up or other discovery requests about.

The Court notes that to the extent that the defendants that Sarah Sternklar has everything already and otherwise had access to everything, the Court requested supplemental briefing which the parties have provided (NYSCEF Doc. Nos. 317, 327). The supplemented record does not establish that Sarah Sternklar had adequate access to all of the Foundation's bank accounts such that an accounting would be unnecessary. In fact, as discussed above, it indicates the opposite that Sarah Sternklar has been stiff armed and personally insulted for her years and her concerns summarily dismissed by Mr. Mark. There is also prima facie evidence that accounts exist at institutions which Mr. Mark told Sarah Sternklar they did not exist at when he dismissed her allegations. To wit, Sarah Sternklar adduces documents showing that she was prevented from accessing a Foundation account at Bank United in August 2023 (NYSCEF Doc. Nos. 331-332). The record does not indicate she has received these records at any other time, and indeed the existence of the Bank United account may have been concealed from her, as discussed above. This is sufficient to raise an issue of fact as to whether Sarah Sternklar received all the financial documents she was entitled to as a director of the Foundation.

Thus, given that the protections of N-PCL § 720-a do not apply, the defendants' cross-motion to dismiss Sarah's fourth cause of action must be denied, because issues of fact exist as to whether (i) Mark Sternklar and Cindy Sternklar-Worenklein failed to perform any of their duties as directors which caused the Foundation to make payments it should not otherwise have had to make, *e.g.*, by incurring extra tax liability or paying Mr. Adelsberg for services he never

651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY
Motion No. 011

Page 32 of 34

32 of 34

rendered, and (ii) whether Sarah Sternklar has received all the financial records of the Foundation such that ordering an accounting would be superfluous as a matter of law. Sarah Sternklar is entitled to receive the bank account information she has not yet received and the Foundation's tax returns which it is not disputed she has not received. **And she is entitled to understand how certain of the documents were purportedly signed by her father, Jack Sternklar, after his death.**

Given the foregoing and the substantial issues of fact that both Sarah Sternklar and the defendants raise with respect to each others conduct and each others' demand for an accounting pursuant to N-PCL § 720, Sarah Sternklar and the defendants are each given leave to move by order to show cause for summary judgment on their statutory accounting claims brought under N-PCL § 720 (*i.e.*, plaintiff's fourth cause of action and the defendants' third counterclaim).

The Court has considered the parties' remaining arguments and finds them unavailing.

Accordingly, it is hereby

ORDERED that Sarah Sternklar's motion for summary judgment is denied; and it is further

ORDERED that the defendants' cross-motion for summary judgment is granted solely to the extent of dismissing Sarah Sternklar's third cause of action; and it is further

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No. 011**

**Page 33 of 34**

33 of 34

ORDERED that Sarah Sternklar is given leave to move by order to show cause for summary judgment as to her fourth cause of action for a statutory accounting pursuant to N-PCL § 720, and the defendants are given leave to move by order to show cause for summary judgment on their third counterclaim for a statutory accounting pursuant to N-PCL § 720.

20240723162732AB0RR0KDCC448A7AD23I9558C1376D229939426

_____
**7/23/2024**
**DATE**

_____
**ANDREW BORROK, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | X | NON-FINAL DISPOSITION | |
|---|---|---|---|---|---|---|
| | | GRANTED | DENIED | X | GRANTED IN PART | OTHER |
| APPLICATION: | | SETTLE ORDER | | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | FIDUCIARY APPOINTMENT | REFERENCE |

**651270/2021   STERNKLAR, SARAH vs. STERNKLAR-WORENKLEIN, CINDY**
**Motion No.  011**

**Page 34 of 34**

[* 34]