[743 NYS2d 483]

Celia Barbour, Respondent, v Gabriele Knecht et al., Appellants.

First Department, June 18, 2002

## APPEARANCES OF COUNSEL

*Nancy K. Feinrider* of counsel (*Kalkines, Arky, Zall & Bernstein LLP,* attorneys), for respondent.

*Thomas P. Higgins* of counsel (*Higgins & Trippett LLP,* attorneys), for appellants.

## OPINION OF THE COURT

SULLIVAN, J.

Plaintiff, a disgruntled minority shareholder in a corporation that essentially acts as a cooperative corporation, brought this action, individually and, purportedly, on behalf of other shareholders, against the corporation and three individuals, Gabriele Knecht, the corporation's majority shareholder and one of its three directors, and Christopher Muto and Naomi Lyum, the corporation's other two directors, who are not shareholders. Damages, as well as declaratory relief, are sought. The complaint asserts six causes of action. The first and second, brought individually, allege tortious interference with contract against all the defendants; the third, brought individually, alleges breach of fiduciary duty under Business Corporation Law § 717 against the individual defendants only; the fourth, brought individually and on behalf of the other shareholders, alleges waste of corporate assets under Business Corporation Law § 720 against the individual defendants only; the fifth, brought individually, alleges tortious interference against defendant Knecht only; and the sixth, brought individually and on behalf of the other shareholders, alleges oppression of the minority shareholders by the individual defendants. The matter is before us on defendants' appeal from, inter alia, the grant of partial summary judgment in plaintiff's favor declaring that the board's approval of the transfer to plaintiff of shares, reflective of ownership of one of the cooperative apartments, was not required or, if required, had been unreasonably withheld.

Plaintiff is one of the shareholders of defendant 411-13 Bleecker Street Realty Corp. (the corporation), having purchased, in 1994, the shares allocated to one of its six residential units. The corporation, formed in November 1976, owns and operates two adjacent, landmarked Greenwich Village buildings built in the 1800s, each four stories high, with commercial space on the first floor and a residential unit, just over 20 feet wide, on each of the second, third, and fourth floors. One hundred shares were allocated to each of five of the apartments and 118 shares to the other apartment. Paragraph 7 of

the certificate of incorporation provides that "[n]o shares shall be transferred without the prior consent of the directors."

In January 1977, eight individuals, including defendant Knecht and nonparties John Horrigan and Richard Light, who owned all of the stock of the corporation, entered into a stockholders' agreement that contains a provision affording each shareholder a right of first refusal whenever any shareholder wishes to sell his or her shares. Paragraph II (a) of that agreement states:

> "If any Stockholder (the Transferor) desires to transfer all of his shares of the Corporation's stock, he shall first obtain a bona fide offer to purchase from a 3rd person (who may be another Stockholder) and then give written notice to the other Stockholders offering to sell his said shares in equal parts to such of the other Stockholders as shall elect to purchase * * *. In the event any of the Stockholders elect to purchase the Transferor's shares, then the Transferor will sell to them for the same sales price set forth in such notice, provided, however, the Transferor first obtains his release from the liabilities and obligations of the Guaranty given by the Stockholders to 22 Charles Street Corp. dated January 26, 1977 (the Guaranty). *In the event none of the Stockholders elects to purchase the Transferor's shares* or the Transferor cannot obtain such release, *then* the Transferor shall have the right to proceed to sell the shares to the prospective purchaser for the sales price and upon the terms of the transfer set forth in the Transferor's notices, *provided, however,* that (i) such prospective purchaser becomes a party to and is bound by the terms of the Guaranty, (ii) *the Corporation gives its written consent to the transfer of such prospective purchaser (which consent will not be unreasonably withheld*), and (iii) such prospective purchaser becomes a party to and is bound by the terms of this Agreement" (emphasis added).

Throughout the corporation's history, all transfers of shares have been subject to the approval of the board of directors.

In 1995, Knecht, who originally occupied the fourth floor of the 413 building and owned 100 shares, purchased another 118 shares and acquired the second floor apartment in the same building, unit 4, the largest in the two buildings. According to

plaintiff and her witnesses, Knecht uses this second apartment as a work studio. In January 2000, Light, another of the original shareholders, offered to sell Knecht his 100 shares for $150,000. Although Light gave the other stockholders the opportunity to purchase, no other stockholder accepted the offer. After Knecht accepted, the corporation provided her with an application form which required her to furnish certain financial information. Included in the documents was the proviso, "The proposed purchase cannot be consummated without the [b]oard's consent." Knecht furnished the requested information. Besides Knecht and plaintiff, who at the time was the board president, the other shareholders, each an owner of 100 shares, were Horrigan, Light and nonparty Carol Wreszin. Despite the fact that Knecht's financial information and application were "in order," the other shareholders, concerned that if the sale were consummated Knecht would own a majority of the shares, kept deferring board review, prompting Knecht and Light to commence a CPLR article 78 proceeding against plaintiff and Wreszin to compel a special meeting of the board (*Knecht v Wreszin and Barbour*).[1] Supreme Court (Tolub, J.) ruled in Knecht's favor.

At a special meeting of the stockholders held on July 25, 2000, Light and Knecht, who, together, owned 318 of the corporation's 618 shares, removed plaintiff, Wreszin and Horrigan as board members and replaced them with defendants Muto and Lyum and nonparty Anthony Muto, none of whom is a resident of the buildings. The new board approved the sale of Light's shares to Knecht. The closing took place on August 1, 2000. After Light's death in November 2000, the bylaws were changed so that the board would consist of only three members, Knecht and the defendants Muto and Lyum.

In August 2000, Horrigan, pursuant to paragraph II (a) of the stockholders' agreement, informed the shareholders that plaintiff had offered to buy his 100 shares for $225,000. Both Knecht and plaintiff exercised their right of first refusal. Despite the corporation's efforts to have Horrigan's attorney draw three contracts, one for a sale of the shares to Knecht only, another for a sale to plaintiff only, and a third for a sale of the shares jointly to both, he drafted one contract providing for the sale of the shares jointly to Knecht and plaintiff; the contract provided that if one of them failed to tender a signed contract

---

1. According to plaintiff, the delay would not cause Knecht hardship since Knecht had told the board that she would use the new apartment "only to house her mother and brother on their occasional visits to the City."

with the requisite deposit or to close in accordance therewith, Horrigan had the right to sell to the other.

Meanwhile, the corporation requested financial information from both plaintiff and Knecht. Although plaintiff took the position that board approval was not required, she eventually furnished the information sought. Knecht, who did not dispute the requirement of board approval, provided the requested information. On December 15, 2000, the board approved the sale of Horrigan's 100 shares to Knecht but refused to consent to the transfer of such shares to plaintiff, basing its decision on a finding that plaintiff did not intend to use the cooperative apartment as her primary residence and on alleged concerns relating to plaintiff's "character, fitness, integrity and commitment to the community." Plaintiff, upon learning of the board's decision, vigorously disputed these findings and in her moving affidavit asserts that the board never acceded to her request to meet with it, either before or after its disapproval of the sale to her.

On December 18, 2000, Knecht signed and returned the contract Horrigan had sent after making a series of material changes, basically eliminating the provisions relating to a joint sale so that the contract would reflect a sale to her alone. Plaintiff, on December 19, 2000, signed and returned the contract, as proposed, without any changes. On that same date, Horrigan's attorney notified Knecht that her changes were unacceptable. Thereafter, on December 27, 2000, Horrigan, electing, pursuant to the specific terms of the contract, to sell the unit to plaintiff based on Knecht's failure to tender a signed unaltered contract, executed and returned the signed contract, revised to show her as the sole purchaser, that plaintiff had tendered. Upon learning of this development, Knecht commenced an action for specific performance. Supreme Court (Weissberg, J.) dismissed the matter for failure to state a cause of action and this Court affirmed. (*Knecht v Horrigan*, 290 AD2d 222.)

In the interim, on January 12, 2001, plaintiff commenced this action for, inter alia, tortious interference with her rights under the stockholders' agreement and the contract for the purchase of Horrigan's shares. After joinder of issue, plaintiff moved for partial summary judgment declaring that the consent of the board of directors to the sale of Horrigan's shares was not required or, if required, was withheld in violation of Business Corporation Law § 717. Defendant cross-moved to dismiss the complaint pursuant to CPLR 3211 and 3212.

In granting the motion and declaring in plaintiff's favor, as requested, the motion court ruled that board approval was required for outside purchasers only and that, "[e]ven if * * * Cooperative approval were necessary, it does not make sense that non-tenant outsider Directors should decide who should live in which apartment in the Cooperative." The court further found that the board had unreasonably withheld its consent to plaintiff's purchase of the shares since she required the apartment for living space while Knecht, who already owned three apartments in one building, had failed to demonstrate why she needed a fourth in the adjacent building. The court directed the board to approve the transfer of the shares to the Horrigan apartment to plaintiff.

The court granted in part and denied in part the cross motion, dismissing the tortious interference claims as moot in light of its grant of partial summary judgment and on the further ground that "it is unclear what contract has been tortiously interfered with." It denied dismissal of the claims based on corporate waste and improper takeover of the board of directors, as well as the improper use of the Knecht apartment, rejecting defendants' argument that these claims mixed derivative and personal claims. This appeal, which also encompasses, to the extent it was adverse to defendants, the disposition of the cross motion, followed.[2]

Summary judgment should not have been granted in plaintiff's favor declaring that board approval to the sale to her of Horrigan's shares was not required or, if required, was unreasonably withheld. On its face, paragraph 7 of the certificate of incorporation clearly and unambiguously requires board approval of the sale of shares of the corporation's stock. On the other hand, while board approval is required under paragraph II (a) of the stockholders' agreement, that approval is limited to instances where, after written notice to the other stockholders, "none of the [s]tockholders elects to purchase the [t]ransferor's shares." The approval provision, however, does not apply here since Horrigan gave written notice to the other three stockholders of his intent to sell and both Knecht and plaintiff elected to purchase. Thus, in this instance, the certificate of incorporation and the stockholders' agreement are in direct conflict. If we were to look solely at the stockholders' agree-

---

2. The motion court subsequently ordered defendants to issue, by February 6, 2002, a stock certificate and proprietary lease to effectuate the sale of the Horrigan apartment shares to plaintiff. After the filing of a notice of appeal, this Court denied a stay of the transfer of shares.

ment, the motion court's interpretation that board approval is not required when current stockholders elect to purchase would be correct. But in determining matters of corporate governance documents should not be looked at in isolation.

The relationship between the shareholders of a cooperative corporation and the corporation, as well as the extent of the authority of the board of directors, is determined by the certificate of incorporation, the bylaws and proprietary lease, which must be read together. (*Fe Bland v Two Trees Mgt. Co.*, 66 NY2d 556, 563.) Given the conflicting provisions in the certificate of incorporation and the stockholders' agreement, and the ambiguity presented as a result, the conduct of the parties is the best evidence as to their meaning. (*See, generally, Webster's Red Seal Publs. v Gilberton World-Wide Publs.*, 67 AD2d 339, *affd* 53 NY2d 643.) As this record shows, in the history of the corporation, no transfer of shares has ever taken place without board approval. This has been the consistent practice even when the purchaser was already a stockholder. When, for example, Knecht, a shareholder since the corporation's formation in 1976, purchased Light's shares in 2000, at a time when plaintiff was the corporation's president, she had to obtain board approval. Thus, we hold, contrary to the motion court's view, that plaintiff was required to obtain board approval.

In determining whether the board, in approving the sale of Horrigan's shares to Knecht and disapproving the transfer to plaintiff, unreasonably withheld its consent in the latter instance, it is the business judgment rule, not the court's independent assessment of the reasonableness of the decision, that provides the proper standard of review. (*See, e.g., Matter of Levandusky v One Fifth Ave. Apt. Corp.*, 75 NY2d 530.) Under the rule, courts must defer to a board's determination if it was taken in furtherance of the corporation's purposes, was within the scope of the board's authority and was taken in good faith. (*Id.* at 538.) The business judgment rule is not an insuperable barrier, however, and "permits review of improper decisions, as when the challenger demonstrates that the board's action * * * deliberately singles out individuals for harmful treatment." (*Id.* at 540.)

Here, only the board's good faith is at issue. Contrary to defendants' argument, plaintiff was not required to show that the board members were self-interested. (*See, e.g., Ackerman v 305 E. 40th Owners Corp.*, 189 AD2d 665, 667.) A showing of unequal treatment is sufficient. (*Id.*; *Bryan v West 81 St. Owners Corp.*, 186 AD2d 514, 515.) In any event, interest is not

limited to financial self-interest; interest can be shown if a director is controlled by an interested director. (*See, Marx v Akers*, 88 NY2d 189, 200.)

Plaintiff has submitted evidence of the board's bad faith. According to plaintiff, Knecht, an obviously interested director, given her effort to purchase the shares and obtain the apartment for herself, controlled defendants Muto and Lyum, making them interested as well. Plaintiff argues that the board unfairly refused to permit her to purchase Horrigan's shares on the ground, questionable, at best,[3] that the Bleecker Street apartment was not her primary residence and that although she presented proof that this conclusion was incorrect, the board refused to reconsider the question of plaintiff's primary residence. In addition, plaintiff claims that the board failed to conduct an adequate investigation before reaching its decision and that despite plaintiff's request for an interview, the board never asked her to meet with it. In this regard, it is noted that much of the factual predicate for the board's purported "concerns [as to plaintiff's] character, fitness, integrity and commitment to the community" involves events which occurred prior to the appointment of two of the three board members. This showing, while impressive, was not sufficient to warrant summary judgment in plaintiff's favor on the third cause of action for breach of fiduciary duty. As their affidavits reveal, defendants Muto and Lyum deny being controlled by Knecht. Since Knecht's interest in the transaction was fully disclosed, her participation in the board's decision was permissible under the express terms of the certificate of incorporation and was consistent with Business Corporation Law § 713.

Defendants argue that, quite apart from the issue of plaintiff's primary residence, they had sufficient grounds to reject plaintiff's application, citing her recent tenure as president of the corporation during which, as noted, a lawsuit, the first of its kind, was commenced to compel her to perform the ministerial task of calling a special meeting. They cite questionable unauthorized payments during her tenure as president to the former manager of the buildings, who resigned in September 2000, and the approval of a below-market, commercial lease

---

**3.** Although plaintiff's 1999 federal income tax return, the sole basis for the board's conclusion that the apartment was not her primary residence, shows her residence as 12 Old Cat Rock Road, Garrison, New York, she submitted evidence before the motion court that the Garrison house was just a weekend retreat and that she and her family live at the Bleecker Street building during the week.

with one of the corporation's two commercial tenants. In November 2000, the corporation served plaintiff with a notice of default to keep the hallway of the first floor clear of her baby carriage, which allegedly created a fire hazard, one which, they claim, persists to this day. Defendants also claim that, in December 2000, plaintiff filed a frivolous complaint as to Knecht's use of a portion of the premises with the Department of Buildings, which, after an inspection, concluded, "No action necessary based upon physical obser[vation]." Defendants further claim that in response to the board's request for financial information as to the proposed sale of Horrigan's shares, plaintiff responded begrudgingly and in an incomplete fashion. Finally, defendants argue that plaintiff unfairly attempted to influence Horrigan to sell his shares to her, citing the fact that plaintiff was secretly paying him $1,000 per month.

All of these grounds, as well as the question of plaintiff's primary residence, were set forth in support of the board's December 15, 2000 resolution disapproving the transfer of Horrigan's shares to plaintiff. Thus, summary judgment was inappropriate since a clear issue of fact was presented as to the board's alleged lack of good faith. By the same token, defendants' cross motion to dismiss the third cause of action or for summary judgment thereon was properly denied.

Although, in light of our determination, we need not reach the issue of whether, as the motion court found, Knecht waived her right to one half of Horrigan's shares, we agree that Knecht waived her right to joint ownership by rejecting the terms of the contract sent her. Knecht knew that Horrigan reserved the right to sell his shares to only one of the prospective purchasers if the other failed to tender a signed contract, as drawn. While a waiver is not lightly presumed and must be clearly established (*see, e.g., Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 968), the record demonstrates that Knecht intentionally relinquished her right to one half of Horrigan's shares by returning a signed contract that materially departed from the one offered.

As to the balance of the cross motion, the court should have granted defendants summary judgment on the fourth cause of action, which alleges that the individual defendants wasted the corporation's assets "by paying attorney fees incurred to further the personal economic interests of Knecht and not in furtherance of legitimate interests of the [c]orporation." In sup-

port of the cross motion, defendants submitted the unchallenged affidavit of Knecht and affirmation of the attorney representing her and the corporation, in which each denies that the corporation paid for any legal services rendered in behalf of Knecht. As they explain, since November 2000, the attorney's firm has separately billed the corporation and Knecht for services rendered to each. Both have separately paid their own bills. Before November 2000, Knecht paid for legal services rendered to the corporation. Challenging the sufficiency of defendants' showing, plaintiff argues that defendants should have submitted invoices, canceled checks or other evidence to support this assertion. In opposing the cross motion, however, plaintiff failed to make a showing that "facts essential to justify opposition may exist but cannot then be stated" (CPLR 3212 [f]). A party opposing summary judgment must submit evidence in admissible form or explain why he or she cannot do so. (*Zuckerman v City of New York*, 49 NY2d 557, 560, 562.) Since plaintiff has failed to do either, summary judgment dismissing the fourth cause of action for waste should have been granted. We note also plaintiff's failure to assert this claim, which is derivative in nature, in proper form or to comply with the pleading requirements for a derivative action (*see*, Business Corporation Law § 626 [c]).

While not well pleaded, the sixth cause of action, which alleges that the sale of Light's shares to Knecht permitted Knecht to assume majority control and to amend the corporation's bylaws to "disallow participation by the other shareholders in the management and operations" of the corporation, seems to be asserting a cause of action for oppression of the minority shareholders. (*See, generally*, Robert B. Thompson, *The Shareholder's Cause of Action for Oppression*, 48 Bus Law 699 [1993].) Majority shareholders and directors of a close corporation stand in a fiduciary relationship with the corporation and minority stockholders and are required to exercise the utmost good faith. (*Alpert v 28 William St. Corp.*, 63 NY2d 557, 568; *Levine v Styleart Press*, 31 Misc 2d 106, 107.) Since defendant 411-13 Bleecker Street Realty Corp. is a close corporation, plaintiff's complaint that she and the other minority shareholders have been frozen out of the management of the corporation asserts a cognizable wrong. (*See, generally*, *Matter of Kemp & Beatley [Gardstein]*, 64 NY2d 63, 71, 73.)

This cause of action, as pleaded, however, as well as the fifth

cause of action,[4] which asserts wrongs similar to those alleged in the sixth cause of action, is a confusing hodge-podge of plaintiff's personal claims, claims derivative in nature, and claims allegedly asserted in behalf of the other minority shareholders, none of whom are parties to this lawsuit. The mingling of derivative claims and individual claims requires dismissal of the causes of action so affected. (*See, Abrams v Donati*, 66 NY2d 951, 953; *Baliotti v Walkes*, 134 AD2d 554, 555.) The dismissal, however, is with leave to replead, should plaintiff be so advised. (*See, Abrams v Donati, supra* at 953.)

Accordingly, the order of the Supreme Court, New York County (Helen Freedman, J.), entered December 27, 2001, which, inter alia, granted plaintiff's motion for partial summary judgment on the third cause of action and denied, in part, defendants' cross motion to dismiss the complaint and for summary judgment, should be modified, on the law, to deny the motion, grant defendants' cross motion for summary judgment to the extent of dismissing the fourth cause of action outright and dismissing the fifth and sixth causes of action with leave to replead within 30 days of service of a copy of this order with notice of entry and, except as thus modified, affirmed, without costs or disbursements.

ANDRIAS, J.P., WALLACH, RUBIN and GONZALEZ, JJ., concur.

Order, Supreme Court, New York County, entered December 27, 2001, modified, on the law, to deny plaintiff's motion for partial summary judgment on the third cause of action and grant defendants' cross motion to dismiss and for summary judgment to the extent of dismissing the fourth cause of action outright and dismissing the fifth and sixth causes of action with leave to replead within 30 days of service of a copy of this Court's order with notice of entry and, except as thus modified, affirmed, without costs or disbursements.

---

**4.** To the extent it asserts a claim for tortious interference, the fifth cause of action has been dismissed.