(February 14, 2008)

■ WAVERLY CORP., Appellant, v CITY OF NEW YORK et al., Respondents. [851 NYS2d 176]—

Order, Supreme Court, New York County (Eileen A. Rakower, J.), entered June 20, 2007, which denied plaintiff's motion for summary judgment seeking a declaration of the parties' rights and obligations as to the payment of real estate taxes under their lease and to dismiss defendants' counterclaims, unanimously reversed, on the law, without costs, the motion granted to issue a declaration that the lease requires defendant City of New York to pay real estate taxes on the entire block and lot and to remit payment directly to the City Department of Finance and defendants' counterclaims otherwise dismissed. The Clerk is directed to enter judgment accordingly.

Plaintiff owns the building located at 143 Waverly Avenue in Brooklyn and an adjacent yard. The entire property is designated on the tax map as Block 1889, Lot 1. In November 1995, defendant City of New York entered into a 20-year lease with plaintiff. The preamble to the lease indicated that the lease governed "approximately 29,880 square feet"; however, in the lease the demised premises were described as "the entire building comprising approximately 22,074 rentable square feet of interior space and approximately 7,806 square feet of the roof play area located at 143 Waverly Avenue (Block 1889, Lot 1) in the Borough of Brooklyn." Defendant Administration for Children's Services (ACS) uses the building and the roof area to operate a day care center. While the City has a key to a fence enclosing the adjacent yard, it contends that it never used the yard and that the key was for emergency purposes.

The lease required the City to pay, "within thirty (30) days after receipt of a bill therefor, all real estate taxes, assessments, water rates and sewer rents and vault taxes (if any) (as well as interest and penalties resulting from [the City]'s delay in the payment thereof)." The lease defined "real estate taxes" as "taxes on or with respect to the Building and the land upon

which it is located." A separate section of the lease specified that the City should send its monthly rent payments to plaintiff at an address provided in the lease.

From the commencement of the lease in November 1995, through 2006, the City's Department of Finance sent real estate tax bills directly to ACS. The bills were for the taxes assessed on the entire block and lot, and each year the City paid the entire tax bill directly to the Department of Finance.

On or about December 15, 2006, the City sent a letter to plaintiff advising that as of January 1, 2007 it would cease paying real estate taxes directly to the Department of Finance. Instead, the letter stated, the City would only reimburse plaintiff after plaintiff paid the taxes. The letter also acknowledged that the City had been paying real estate taxes assessed on the entire block and lot but advised that, since the demised premises consisted only of the approximately 22,074 rentable square feet of interior space in the building and the approximately 7,806 square feet of the roof play area, the City would seek to recoup from plaintiff an amount equal to real estate taxes it had paid that were not attributable to those portions of the property. The City did not explain in its letter how it intended to compute the amount it intended to recoup from plaintiff. The Department of Finance's final assessment roll for 2006-2007 for the property demonstrates that the tax assessment was not apportioned between the building and the adjacent yard or other portions of the property.

Plaintiff commenced this action for a declaration of its rights and obligations under the lease and specific performance of the City's obligations. The City counterclaimed for declaratory relief and for a judgment of $56,164.13, the amount by which it alleges plaintiff was unjustly enriched due to the City's overpayment of real estate taxes.

Upon joinder of issue, plaintiff moved for summary judgment on its claims and to dismiss the City's counterclaims. Plaintiff argued that the lease clearly and unambiguously required the City to pay real estate taxes assessed on the entire block and lot and to remit payment directly to the Department of Finance. The City argued in opposition that the lease provisions relied on by plaintiff were ambiguous regarding the specific obligations at issue. It urged that summary judgment was premature without discovery regarding the parties' intentions at the time the lease was negotiated.

The motion court denied the motion in its entirety. The court noted that there was no explicit requirement in the lease that the City pay real estate taxes directly to the Department of

Finance. It rejected plaintiff's argument that the City's responsibility under the lease for interest and penalties related to the late payment of taxes compelled the conclusion that the City was the primary obligor for such payment. Instead, the court concluded that plaintiff merely held the right to recoup such interest and penalties from the City in the event it was forced to pay the taxes late because of the City's own tardiness in making payment to plaintiff. Regarding the extent of the City's real estate tax obligation, the court recognized that the lease as written required the City to pay taxes assessed on the entire lot. However, the court held that summary judgment on the issue was premature, as discovery might reveal documents evincing a modification of the lease to require the City to pay real estate taxes attributable to the interior of the building and the roof play area only.

We reverse. The lease unambiguously provides that the City is the party responsible for payment of real estate taxes in the first instance. To be sure, the lease would have been more clear had it specified that the City's 30-day deadline to pay taxes was measured from its receipt of a bill from the Department of Finance. However, in considering the intention of the parties, a court should read a contract as a whole and consider its various clauses contextually (see *HSBC Bank USA v National Equity Corp.*, 279 AD2d 251, 253 [2001]). Here, an entirely separate provision in the lease specifically directed the City to send its monthly rent payments to plaintiff. It is thus reasonable to conclude that by not so specifying with respect to real estate tax payments, the parties intended that the City would send such payments to someone other than plaintiff. Moreover, the clause requiring that the City pay penalties and interest assessed because of the late payment of taxes confirms that it was required to send the real estate payments directly to the Department of Finance. We reject the motion court's interpretation of this clause, which is based on the unreasonable assumption that plaintiff negotiated the lease intending to forbear payment of real estate taxes until the City advanced payment.

We agree with the court that the lease is unambiguous with respect to the extent of the City's real estate tax liability. The lease requires payment for taxes assessed against not only the building, but also "the land upon which it is located." Nothing in the lease suggests that the parties considered the property to be divisible. Any significance that the City would attribute to the reference to the square footage of the building and the roof area is diminished by the fact that the adjacent yard was vacant and itself was of no value. As such, it is not reasonable to believe

that by specifying the square footage the parties were distinguishing between portions of the property that the City was entitled to enjoy and portions that it was not entitled to enjoy. Furthermore, not even the Department of Finance considered the property to be divisible for tax purposes.

However, we disagree with the court's decision to deny plaintiff summary judgment on this point. This was based on the court's sua sponte suggestion that discovery may reveal evidence suggesting that the parties intended that the City was only responsible for real estate taxes attributable to the portion of the lot it "actually used." Where an agreement is unambiguous, extrinsic evidence may not be considered in order to create an ambiguity (see W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 163 [1990]).

Even were we to find that both provisions at issue are ambiguous, on a search of this record, we would award summary judgment to plaintiff. The best evidence of the intent of parties to a contract is their conduct after the contract is formed (see Barbour v Knecht, 296 AD2d 218, 224 [2002]). Here, the record is clear that for the 12 years between the commencement of the lease term and the December 15, 2006 letter sent by the City to plaintiff, the City paid real estate taxes assessed on the entire block and lot directly to the Department of Finance. In opposition to plaintiff's motion, the City states that this was "erroneous." Such a bald conclusory allegation of mistake is insufficient to defeat summary judgment (see Cohen Tauber Spievak & Wagner, LLP v Alnwick, 33 AD3d 562 [2006], lv dismissed 8 NY3d 840 [2007]). Moreover, the City's claim that summary judgment is premature because discovery "may lead" to evidence establishing the parties' true intent is unavailing. Such an argument must be based on something other than mere hope or conjecture (Voluto Ventures, LLC v Jenkens & Gilchrist Parker Chapin LLP, 44 AD3d 557 [2007]). Concur—Lippman, P.J., Mazzarelli, Gonzalez, Sweeny and McGuire, JJ. [See 2007 NY Slip Op 31724(U).]