Schneider v Pine Mgt., Inc. (2024 NY Slip Op 51030(U))

[*1]

Schneider v Pine Mgt., Inc.

2024 NY Slip Op 51030(U)

Decided on August 8, 2024

Supreme Court, New York County

Reed, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 8, 2024
Supreme Court, New York County

Jerome Schneider, RUTH SCHNEIDER, MARC SCHNEIDER, and MARNI SCHWARTZ, Plaintiffs,

against
Pine Management, Inc., LLOYD J. PINE, BRENDA ROHLMAN, ZIZI REALTY, LLC, JERUTH REALTY LLC, BAR-MAR REALTY LLC, MARC REALTY LLC, RIS REALTY LLC, BREN-EL REALTY LLC, JHJ REALTY LLC, SIR REALTY LLC, MARNI REALTY LLC, and RUDEL REALTY LLC, Defendants.

Index No. 654303/2019

Attorneys for Plaintiffs:
David J. Ranzenhofer of FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP
Eric Seiler of FRIEDMAN KAPLAN SEILER ADELMAN & ROBBINS LLP
Attorneys for the Defendants:
Sean E. O'Donnell of HERRICK, FEINSTEIN LLP
Nicholas G.O. Veliky of HERRICK, FEINSTEIN LLP

Robert R. Reed, J.

The following e-filed documents, listed by NYSCEF document number (Motion 003) 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81, 82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 156, 157, 158, 159, 160, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 217, 218, 219, 220, 221, 222, 223, 224, 225, 226, 227, 228, 229, 230, 231, 232, 233, 234, 235, 236, 237, 238, 239, 240, 241, 242, 243, 244, 245, 246, 247, 248, 249, 250, 251, 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 267, 268, 269, 270, 271, 272, 273, 274, 275, 276, 277, 281, 282, 283, 284, 285, 286, 287, 288 were read on this motion for PARTIAL SUMMARY JUDGMENT.
This action relates to defendant Pine Management, Inc.'s stewardship over ten LLCs, nominal defendants in this action, that own residential rental properties in Manhattan. In motion sequence number 003, plaintiffs move pursuant to CPLR 3212 for partial summary judgment on portions of their first and sixth causes of action for breach of contract and on their fourth cause [*2]of action for an injunction. For the following reasons, the motion is denied.
I. BACKGROUND
The following facts are undisputed except where noted.
Plaintiffs, Jerome, Ruth, and Marc Schneider and Marni Schwartz, hold interests in the ten subject LLCs either directly or through trusts in their name. The LLCs include Marni Realty LLC, Rudel Realty LLC, Zizi Realty, LLC, Jeruth Realty LLC, Marc Realty LLC, RIS Realty LLC, Bren-El Realty LLC, JHJ Realty LLC, Sir Realty LLC, and Bar-Mar Realty LLC, which are nominal defendants in this action (each will be referred to herein without appending the word "LLC"). Jerome Schneider and Ruth Schneider are husband and wife, and Marc Schneider and Marni Schwartz are their children.
Defendants include Pine Management, Inc. (Pine Management), the company that manages the subject LLCs, as well as individuals Lloyd J. Pine and Brenda Rohlman, who are nephew and niece to Jerome Schneider. Lloyd Pine and Brenda Rohlman hold interest in Marni Realty and Rudel Realty through a trust.
Beginning in the 1950s, Jerome Schneider and his brother-in-law, Harold Pine, acquired the twelve properties, which they managed together. In 1979, Schneider moved abroad and left Pine to manage the properties on his own, at which time he agreed that Pine would be paid a fee for managing the properties. In 1985, Pine created the defendant entity Pine Management with his daughter, Brenda Rohlman, and her husband Thomas Rohlman, non-party in this case. Today, Pine Management is owned and run by Brenda and Thomas Rohlman and their three children and continues to manage the twelve subject properties.
In the mid-1990s, the ten subject LLCs were created and given ownership of the twelve properties, with eight of the LLCs owning one property each and two LLCs jointly owning two properties. Each LLC was organized pursuant to an Operating Agreement. Section 5.1 of the Operating Agreements provides that "[t]he business and affairs of the Company shall be managed by the Members" (affirmation of plaintiffs' counsel in support of mot, exhibits 10-11). On the other hand, section 5.2 of the Operating Agreements also provides that, "[i]n accordance with LLCL §102(c), THOMAS ROHLMAN, BRENDA ROHLMAN and HAROLD PINE are hereby designated and authorized to act as the Authorized Persons on behalf of the Company" (see id.). In addition, section 5.2 of the Operating Agreements states that "[t]he Authorized Persons, acting singly, are each hereby authorized to execute any and all documents required to be executed by the Company, except the sale or mortgaging of Company real property, which will require unanimity" (see id.).
In the early 2010s, eight of the LLCs (Amended LLCs) entered into new amended Operating Agreements (see affirmation of plaintiffs' counsel in support of mot, exhibits 12-19). The remaining two, Marni Realty and Rudel Realty, still operate under their original Operating Agreements. Section 8.1 (c) of each of the Amended Operating Agreements provides that "Pine Management, Inc. may be paid for services rendered in its role as property manager pursuant to a separate agreement with the Company" (id., exhibits 12-19 § 8.1 [c]).
Undisputed by the parties, the Amended LLCs paid Pine Management a property management fee of 7% of gross collected rents from the properties, at least from 2013 to 2023, as evidenced by financial statements prepared by Pine Management for each of the Amended LLCs (see id., exhibits 81-88).
According to plaintiffs, in 2012, Pine Management began reducing distributions to the LLCs' members, instead "dramatically increasing the amount of cash reserves and capital [*3]improvements or renovations for the properties owned by the LLCs" (compl ¶ 132).
Plaintiffs commenced this action on July 26, 2019, bringing ten causes of action for breaches of each of the LLCs' Operating Agreements or Amended Operating Agreements, breaches of the fiduciary duty, preliminary and permanent injunctions, declaratory judgments, for an inspection of books and records, and an accounting.
In motion sequence number 003, plaintiffs move pursuant to CPLR 3212 for partial summary judgment on the portions of their first and sixth causes of action for breach of contract that seek damages for management fees and construction management fees paid to Pine Management and the fourth cause of action seeking to enjoin defendants from taking certain actions in the management of Marni Realty and Rudel Realty. Defendants oppose the motion.
II. DISCUSSION
It is well established that "the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact. Once the movant makes the proper showing, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (Stonehill Capital Mgt. LLC v Bank of the W., 28 NY3d 439, 448 [2016], citing Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (Stonehill Capital, citing Vega v Restani Constr. Corp., 18 NY3d 499, 503 [2012]).
1. First and Sixth Causes of Action
In the first and sixth causes of action for breach of contract, plaintiffs allege that defendants have caused the Amended LLCs to pay unauthorized "management fees" and "construction management fees" to Pine Management in breach of the Amended Operating Agreements.
"The elements of a cause of action for breach of contract are the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages" (Lebedev v Blavatnik, 193 AD3d 175, 182 [1st Dept 2021] [citations omitted]).
Plaintiffs assert that Pine Management has breached the Amended Operating Agreements by taking management fees and construction management fees from the Amended LLCs without approval of the Members of the Amended LLCs, noting that, according to the Amended Operating Agreements, such compensation requires separate written authorization of the Members of the Amended LLCs, including plaintiffs or their trusts. Indeed, section 8.1 (c) of the Amended Operating Agreements provides that "Pine Management, Inc. may be paid for services rendered in its role as property manager pursuant to a separate agreement with the Company" (affirmation of plaintiffs' counsel in support of mot, exhibits 12-19 § 8.1 [c]). The parties agree that section 8.1 (c) means that compensation for Pine Management is optional, but, if such compensation is provided, it must be pursuant to a separate agreement with each of the Amended LLCs. Plaintiffs assert that the parties never entered into such a separate agreement. Plaintiffs submit affidavits of plaintiffs Jerome, Ruth, and Marc Schneider and Marni Schwartz, who all affirm that they are unaware that any outside agreement exists and that they never entered into such an agreement (J. Schneider aff ¶¶ 31-37; R. Schneider aff ¶¶ 22-28; M. Schneider aff ¶¶ 6-8; Schwartz aff ¶¶ 6-8). Plaintiffs establish a prima facie case.
In opposition, defendants argue that, while the parties never executed a written agreement for compensation, they have an oral agreement for it. Defendants point to Jerome [*4]Schneider's admission that, when he moved abroad in 1979, he agreed that Harold Pine would receive a fee in exchange for managing the properties (see J. Schneider tr at 68, lines 14-20). In his deposition, Jerome Schneider testified, "Later on when I went to Paris, [Harold Pine] said that, 'you know, I'm going to be taking over the properties and I think I should be compensated' . . . I thought that was reasonable" (id.). Further, defendants assert this oral agreement was assigned to Pine Management when it incorporated in 1985, pointing to the fact that Pine assumed Harold's management responsibilities (see id. at 46, line 14 through 47, line 12). However, Jerome Schneider's deposition testimony alone is ambiguous, at best, as proof of a definite offer and acceptance between him and Harold Pine (see Kolchins v Evolution Mkts., Inc., 31 NY3d 100, 106 [2018]). Furthermore, Pine Management's assumption of responsibilities from Harold Pine does not automatically result in an assignment of Harold Pine's right to compensation, if any, because assumption and assignment are legally distinct phenomena (see, e.g., Kagan v K-Tel Entm't, 172 AD2d 375 [1st Dept 1991]).
Defendants also argue that, in the alternative, a contract implied in fact exists between the parties by virtue of the parties' conduct.
Even when a contract is "not formally stated in words," a contract implied in fact may be "derived from the 'presumed' intention of the parties as indicated by their conduct" (Jemzura v Jemzura, 36 NY2d 496, 503 [1975]). "It is just as binding as an express contract arising from declared intention, since in the law there is no distinction between agreements made by words and those made by conduct" (id. at 503-504). The contract may be inferred "from the facts and circumstances of the case" (Jemzura v Jemzura).
A contract implied in fact still requires the usual hallmarks of a contract, including mutual assent among the parties (see Maas v Cornell Univ., 94 NY2d 87, 94 [1999]). Mutual assent may be demonstrated by promises from both parties or beginning or rendering of performance (see id., citing Restatement [Second] of Contracts § 18). Furthermore, "a party's silence will be deemed an acquiescence where he or she is under such duty to speak that his or her conduct, accompanied by silence, would be deceptive and beguiling and failure to speak therefore misleads the other party" (Russell v Raynes Assoc. Partnership, 166 AD2d 6, 15 [1st Dept 1991]). "Such a duty may be created by a course of conduct . . . which gives the offeror reason to understand that silence will constitute acceptance" (id.). "[W]hen a finding as to whether the acts of the parties constituted an assent is dependent as well on other evidence from which differing inferences may be drawn, a question of fact arises" (id.).
For seven to eight years, from the time of the Amended Operating Agreements to the date of the filing of the complaint, Pine Management has continued to take compensation from the Amended LLCs. Plaintiffs certainly were aware that Pine Management was taking such compensation (see, e.g., J. Schneider tr at 67, line 22, through 68, line 20; 279, line 16, through 280, line 20; 282, line 14-19; M. Schneider tr at 300, line 21, through 301, line 13). In fact, plaintiffs regularly received financial statements from Pine Management, and the statements clearly showed the amounts that Pine Management was taking as management fees and construction management fees (see affirmation of plaintiffs' counsel in support of mot, exhibits 81-88). Furthermore, from 1979, Harold Pine had taken a certain percentage of the LLCs' revenues as a management fee, and this arrangement continued after his management was formalized through the creation of Pine Management in 1985, through to the transfer of the properties to the LLCs and the amendment of the Operating Agreements for eight of the LLCs.
It would be reasonable to infer, therefore, that Pine Management's continued [*5]management of the Amended LLCs and their properties manifested assent to the parties' long-standing arrangement. In addition, evidence such as "the submission of a bill for services rendered," can be "evidence to indicate that he or she expected to be paid for the services" (Moors v Hall, 143 AD2d 336, 338 [2d Dept 1988]). The financial statements that Pine Management dutifully submitted to the Amended LLCs and the Members year after year were evidence of their intent to enter into a informal agreement.
Having received the financial statements, if plaintiffs objected to the payments, they had a duty to speak, as their continued silent acquiescence, especially in light of the parties' continued course of conduct dating back to 1979, was highly likely to mislead defendants into assuming plaintiffs agreed with Pine Management's practice of taking compensation for its services (Russell v Raynes Assoc. Partnership). Indeed, "[t]he performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services" unless, in light of the "relationship between the parties, it is natural that such service should be rendered without expectation of pay" (Moors v Hall). Defendants therefore demonstrate the existence of a material issue of fact (see Stonehill Capital Mgt. LLC v Bank of the W.).
Although plaintiffs argue that the finding of an implied-in-fact contract is inconsonant with the express terms of the Amended Operating Agreements, the Amended Operating Agreements do not state that the "separate agreement" must be written—which is reasonable because, as defendants argue, it is possible that they intended to encapsulate the parties' then-current established arrangement. Furthermore, where a contract is silent, "the parties' post-contract course of performance . . . is highly probative of their state of mind at the time the contract was signed" (China Privatization Fund (Del.), L.P. v Galaxy Entertainment Group Ltd., 187 AD3d 596, 597 [1st Dept 2020]; see also Waverly Corp. v City of New York, 48 AD3d 261, 265, [1st Dept 2008] ["The best evidence of the intent of parties to a contract is their conduct after the contract is formed."]).
In addition, the court notes that, while plaintiffs quibble over the exact percentage they thought the management fee was, they never deny that they were aware that some percentage of fees were being taken. Since plaintiffs have not argued that the percentage Pine Management took as compensation was excessive, their dispute over the percentage is irrelevant.
2. Fourth Cause of Action
In the fourth cause of action, plaintiffs assert that defendants have violated Marni Realty and Rudel Realty's Operating Agreements by preventing plaintiffs from exercising their rights to co-manage Marni Realty and Rudel Realty. Plaintiffs allege that Pine Management failed to "consult[] with or s[eek] the approval of the [p]laintiffs" with respect to actions taken on behalf of these LLCs, and that Pine Management is the "de facto Manager of Marni Realty and Rudel Realty" (compl ¶¶ 194, 307). As relief, plaintiffs seek to enjoin Pine Management from taking any actions with respect to the management of Marni Realty and Rudel Realty without the consent of the Jerome Schneider Revocable Trust and the Ruth Schneider Revocable Trust, including (a) payment of any compensation to Pine Management as Manager, "property manager" or in any other capacity; (b) capital improvements for the individual properties owned by Marni Realty and Rudel Realty, (c) setting of reserves for these properties; (d) determining the amount of distributions from these LLCs to the Members; and (e) taking out loans for these LLCs.
"To be entitled to an injunction, a party must show that there was a violation of a right or [*6]threatened violation, that there is no adequate remedy at law, that serious and irreparable harm will result absent the injunction, and that the equities are balanced in his or her favor" (Islamic Mission of Am., Inc. v Ali, 152 AD3d 573, 575 [2d Dept 2017]).
Here, while section 5.1 of the Operating Agreements of Marni Realty and Rudel Realty mention that their business and affairs "shall be managed by the Members," section 5.2 provides that Thomas and Brenda Rohlman and Harold Pine are "designated and authorized to act as the Authorized Persons on behalf of" the LLCs, as defined by Limited Liability Corporation Law § 102 (c) (affirmation of plaintiffs' counsel in support of mot, exhibits 12-19). That statute defines "Authorized Person" as "a person, whether or not a member, who is authorized by the operating agreement, or otherwise, to act on behalf of a limited liability company or foreign limited liability company." The same section of the Operating Agreements permits Pine Management to "to execute any and all documents required to be executed by the Company, except the sale or mortgaging of Company real property, which will require unanimity." Plaintiffs fail to demonstrate that, by taking actions with respect to distributions, compensation, capital improvements, setting of reserves, or borrowing of money, defendants went beyond their contractual authority to "act on behalf of" the LLCs (id., § 5.2).
Indeed, the record indicates that plaintiffs ratified the parties' decades-long course of performance, in which Pine Management alone handled the day-to-day affairs of the LLCs. For instance, in a Memorandum by Jerome and Marc Schneider, they state, "we are not trying in any way to interfere with the day to day management of the properties. We have been, and continue to be, very happy with the job management has done" (NYSCEF doc. No. 269; 273).
Plaintiffs fail to show a violation of a right or threatened violation (Islamic Mission of Am., Inc. v Ali), and the application for an injunction is denied.
Accordingly, it is hereby
ORDERED that plaintiffs' motion for summary judgment is denied in its entirety.
DATE 08/08/2024
ROBERT R. REED, J.S.C.