**Hubshman v 1010 Tenants Corp.**

2025 NY Slip Op 30453(U)

February 5, 2025

Supreme Court, New York County

Docket Number: Index No. 157779/2024

Judge: Lyle E. Frank

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. LYLE E. FRANK**

*Justice*

-----------------------------------------------------------------------------------X

BARBARA HUBSHMAN,

                                   Plaintiff,

- v -

1010 TENANTS CORP., AND THE BOARD OF DIRECTORS OF 1010 TENANTS CORP.

                                  Defendant.

-----------------------------------------------------------------------------------X

| | |
|---|---|
| **PART** | **11M** |
| **INDEX NO.** | 157779/2024 |
| **MOTION DATE** | 09/17/2024 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62

were read on this motion to/for           PREL INJUNCTION/TEMP REST ORDR    .

Upon the foregoing documents, plaintiff's motion is denied, and defendants' cross-motion is granted in part and denied in part.[1]

## Background

The apartment building located at 1010 Fifth Avenue was built by Frederick French, who designed his penthouse apartment to include the first roof-top garden in a residential building in New York. The building was later turned into a cooperative corporation, 101 Tenants Corp. (collectively with the Board of Directors of 101 Tenants Corp., the "Defendants"). The penthouse apartment was purchased by Barbara Hubshman ("Plaintiff") in 1979. Plaintiff started residing in the Apartment since 1956 with her father, who was then the principal owner of the building who converted the building into a co-op. The proprietary lease that governs the apartment expired in September of 2024 (the "Original Lease"). According to the terms of the

---

[1] The Court would like to thank Mingyue Deng for her assistance in this matter.

Original Lease, Plaintiff had exclusive use of the garden, and should the garden need to be removed for building maintenance, the Co-op was responsible for replacing the garden as it was. Another provision prevented the Co-op from removing any of Plaintiff's rights in respect to the garden without her consent.

In the following decades, the garden became a bone of contention between Plaintiff and Defendants. Multiple lawsuits were filed, and the garden was destroyed and rebuilt several times over allegations of water leaks that turned out to be originating from the building façade, not the garden. In both cases, the court had found that Defendants breached the terms of the Original Lease. After the 2009 action, the two parties negotiated a binding settlement agreement ("Settlement Agreement"). The Settlement Agreement permitted the Co-op to do certain repairs unrelated to the Roof Garden, and to fully restore the Roof Garden if it were to be removed. In 2010, the court instated a preliminary injunction enjoining the Co-op from accessing the Roof Garden and reaffirmed Plaintiff's contractual rights stated in paragraph 7 of the Proprietary Lease.

As the expiration of the Original Lease drew near, Defendants decided to remove several of the garden protections from the new version of the Proprietary Lease (the "New Lease"). They held an annual shareholder meeting in May of 2024 (the "May Meeting"), where Defendants allege that a majority of shares were cast in favor of ratifying the New Lease.

Plaintiff filed the underlying suit in August of 2024, seeking among other things declaratory relief and a permanent injunction related to the garden. Plaintiff also moved for a TRO staying the New Lease, which this Court granted in September of 2024 only to the extent of the alterations to the provisions relating to Plaintiff's garden rights. Plaintiff now moves for a

preliminary injunction extending the TRO through the pendency of this action. Defendant

opposes and cross-moves to dismiss the complaint.

**Standard of Review**

It is well settled that when considering a motion to dismiss pursuant to CPLR § 3211,

"the pleading is to be liberally construed, accepting all the facts alleged in the pleading to be true

and according the plaintiff the benefit of every possible inference." *Avgush v. Town of Yorktown*,

303 A.D.2d 340 (2d Dept. 2003). Dismissal of the complaint is warranted "if the plaintiff fails to

assert facts in support of an element of the claim, or if the factual allegations and inferences to be

drawn from them do not allow for an enforceable right of recovery." *Connaughton v. Chipotle*

*Mexican Grill, Inc*, 29 N.Y.3d 137, 142 (2017).

CPLR § 3211(a)(1) allows for a complaint to be dismissed if there is a "defense founded

upon documentary evidence." Dismissal is only warranted under this provision if "the

documentary evidence submitted conclusively establishes a defense to the asserted claims as a

matter of law." *Leon v. Martinez,* 84 N.Y.2d 83, 88 (1994).

A party may move for a judgment from the court dismissing causes of action asserted

against them based on the fact that the pleading fails to state a cause of action. CPLR §

3211(a)(7). For motions to dismiss under this provision, "[i]nitially, the sole criterion is whether

the pleading states a cause of action, and if from its four corners factual allegations are discerned

which taken together manifest any cause of action cognizable at law." *Guggenheimer v.*

*Ginzburg*, 43 N.Y. 2d 268, 275 (1977).

**Discussion**

Plaintiff has moved for a preliminary injunction halting the adoption of certain parts of

the New Lease. Defendants oppose and have cross-moved for dismissal of the complaint

pursuant to CPLR § 3211(a)(1) and (7). For the reasons that follow, Plaintiff's motion for a preliminary injunction fails because it does not establish irreparable harm and Defendants' cross-motion is granted as to the third, fourth, and fifth causes of action and denied as to the rest.

### *The Garden Protections in the Offering Plan Expired in September of 2024*

As a preliminary matter, Plaintiff argues that because the garden rights and the Original Lease are present in the offering plan, these provisions control over the contrary ones in the New Lease. Plaintiff is correct that the offering plan must be read along with the bylaws and any proprietary lease in determining the parties' rights and obligations. *See, e.g., 6 W. 20th St. Tenants Corp. v. Dezer Props. LLC*, 230 A.D.3d 1050, 1051 (1st Dept. 2024). The Original Lease, along with the garden rights as expanded in the second amendment, was also included as part of the offering plan. But the offering plan states that "[t]he proprietary lease will be for a term ending on Sept. 30, 2024, but may be extended by vote of the shareholders." By the explicit terms of the offering plan, the Original Lease expired in 2024 and therefore the provisions relating to Plaintiff's garden rights likewise expired in 2024. *See Harris v. Reagan*, 221 A.D.3d 1069, 1072 (3rd Dept. 2023)(holding that "a party's rights and obligations under an agreement typically cease after its termination").

### *Defendants Were Not Required to Hold a Shareholder Vote on the New Lease*

Because the Original Lease terminated in September of 2024, the question then becomes whether the Defendants' purported passage of the New Lease was procedurally valid. Plaintiff challenges the validity of the meeting and the vote result. The Bylaws Article V § 1 states that "[t]he Board of Directors shall adopt a form of proprietary lease to be used by the Corporation for the leasing of all apartments and other space in the apartment building of the Corporation to be leased to shareholder-tenants under proprietary leases." Nothing in this provision requires the

Board to gain shareholder approval before adopting a new proprietary lease. Therefore, any challenge to the validity of the New Lease that are based on alleged procedural failures surrounding shareholder meetings and votes runs contrary to the express language of the Bylaws.

*Plaintiff's First and Second Causes of Action Survive the Motion to Dismiss*

Given that, as explored above, the terms of the Original Lease expired in September 2024 and the Board was permitted to unilaterally adopt the New Lease, the analysis turns to Plaintiff's claims in light of the motion to dismiss. The first cause of action requests a declaratory judgment that the New Lease was adopted in violation of the Bylaws and that Defendants acted unlawfully by adopting the New Lease before the Original Lease expired. Paragraph 37 of the Original Lease states that "[n]o later than thirty days after the termination of all proprietary leases, whether by expiration of their terms or otherwise, a special meeting of shareholders of the Lessor shall take place to determine whether (a) to continue to operate the building as a residential apartment building […]." By the clear, unambiguous terms of the provision, there must be a meeting deciding whether to continue as a co-op *before* thirty days after the termination of all leases occurs. There is no language requiring that such a decision be made, or such a meeting be held *only* between the period of the termination of the lease and thirty days from said termination. The decision to remain a co-op when the Original Lease did not need to be made after said lease actually terminated, only at some point before thirty days after the termination date.

Plaintiff's declaratory judgment cause of action also seeks to establish that the Defendants "acted in bad faith and in breach of its fiduciary duty" in adopting the New Lease. Defendants' actions and adoption of the New Lease, particularly when the facts pled by Plaintiff are taken to be true, certainly appear to be a determined and targeted attack on the extent of

Plaintiff's rights under the Original Lease as it pertains to the garden. The question then becomes whether or not this is sufficient to sustain a claim of bad faith and breach of fiduciary duty. Challenges to the actions of a co-op board are subject to the business judgment rule. *Levandusky v. One Fifth Ave. Apartment Corp.*, 75 N.Y.2d 530, 542 (1990). But this rule does allow for review of "improper decisions, as when the challenger demonstrates that the board's action … deliberately singles out individuals for harmful treatment." *Barbour v. Knecht*, 296 A.D.2d 218, 224 (1st Dept. 2002); *see also South Tower Residential Bd. of Mgrs. of Time Warner Ctr. Condominium v. Ann Holdings, LLC*, 127 A.D.3d 485, 487 (1st Dept. 2015)(holding that "the business judgment rule does not protect boards that engage in favoritism or unequal treatment of shareholders").

On a motion to dismiss, "the allegations in the complaint are to be afforded a liberal construction, and the facts alleged therein are to be accepted as true, according a plaintiff the benefit of every possible favorable inference and determining only whether the facts alleged fit within any cognizable legal theory." *M & E 73-75, LLC v. 57 Fusion LLC*, 189 A.D.3d 1, 5 (1st Dept. 2020). Here, Plaintiff has alleged that the changes made to provisions 6 and 7 in the New Lease were adopted as part of a vendetta against Plaintiff for the litigious history between the parties and that she has been singled out for unfavorable treatment. This is sufficient, at this stage, to sustain her cause of action for a declaratory judgment that the Defendants acted in bad faith and breached their fiduciary duty. To be clear, such a breach could not be founded on, as Plaintiff largely argues, a violation of the terms of the Original Lease as that lease and the Plaintiff's accompanying rights under it expired in September. But a declaratory judgment that a co-op board breached their fiduciary duty can in certain circumstances be predicated on the unequal treatment of a shareholder, and so to that extent the first cause of action survives the

[* 6]

motion to dismiss. In their second cause of action, Plaintiff requests a permanent injunction staying the enactment of the New Lease, also based on a bad faith breach of fiduciary duty. For similar reasons, this claim survives the motion to dismiss.

### *Plaintiff's Third, Fourth, and Sixth Causes of Action Fail to State a Claim*

In the third cause of action, Plaintiff requests specific performance of the settlement agreement between the parties from November of 2011 and alleges that the New Lease is a violation of that agreement. But the November settlement was clearly predicated on Plaintiff's rights under the Original Lease, as seen by the preamble statement that "the parties hereto acknowledge and agree that, pursuant to paragraph "7" of the Lease, Hubshman has certain rights with respect to her Apartment." Because, for the reasons given above, those rights expired in September of 2024, there is no basis for a court to enforce the settlement agreement delineating those rights. Therefore, the third cause of action fails to state a viable claim and is dismissed. Likewise, the fourth cause of action seeks to have the change of garden rights under the New Lease deemed a breach of the Original Lease. Because the Original Lease terminated, it cannot support a valid breach of contract claim. The fourth and sixth causes of action must also be dismissed, as they too are predicated entirely on an alleged breach of the Original Lease.

### *Plaintiff's Fifth Cause of Action Is Not Irrefutably Contradicted by Documentary Evidence*

In the fifth cause of action, Plaintiff brings an Article 78 challenge to the May Meeting, alleging that she was not given notice, that the vote was done at an annual meeting rather than a special meeting, and that a proper vote was not held regarding the ratification of the New Lease. Defendants move to dismiss, arguing that notice was given, and if not, Plaintiff had waived notice by appearing at the meeting, and that the bylaws do not require that a new lease be adopted *after* the expiration of the old proprietary lease. Turning first to the issue of the annual

meeting, paragraph 37 of the Original Lease, which was still in effect at the time of the May Meeting, does require that a special, rather than annual, meeting be held to determine whether to continue as a residential building. But this would only give Plaintiff grounds to challenge the determination to continue as a co-op, and not the Board's adoption of the New Lease nor the shareholder ratification vote.

Regarding notice, Plaintiff alleges that they protested the lack of proper notice before, during, and after the meeting. Under Bus. Corp. Law § 606, if a shareholder attends a meeting "without protesting prior to the conclusion of the meeting the lack of notice of such meeting", they have waived notice. Defendant produces a sworn affidavit stating that Plaintiff did not protest notice at the meeting, and Plaintiff submits her sworn affidavit stating that she did so protest. Under the standard of a motion to dismiss, her alleged facts must be taken as true and therefore it cannot be said at this stage that she waived her rights to notice.

Plaintiff alleges that notice of the annual meeting was not properly mailed to her apartment nor personally delivered to her. Defendant states that the notice was mailed to an L.A. address Plaintiff provided to the managing agent, and electronically emailed to the residents that same day through a building-specific system. According to Plaintiff's affirmation, she had instructed her agent to inform Defendants that all co-op notices were to be sent directly to her apartment, and only maintenance bills to the L.A. agent. She also alleges that she is not a member of the building's internal email system. Defendants have not met their burden on a motion to dismiss by producing conclusive evidence that contradicts the facts alleged by Plaintiff that go to lack of proper notice. Dismissal of the fifth cause of action at this stage would be premature.

*Plaintiff's Motion for a Preliminary Injunction Fails to Establish Irreparable Harm*

[* 8]

Plaintiff has moved for a preliminary injunction halting the implementation of the revised paragraphs 6 and 7 of the New Lease during the pendency of this action. The granting of a preliminary injunction lies in the court's discretion, and it is "an extraordinary provisional remedy which will only issue where the proponent demonstrates (1) a likelihood of success on the merits; (2) irreparable injury absent a preliminary injunction, and (3) a balance of equities tipping in its favor." *Harris v. Patients Med., P.C.*, 169 A.D.3d 433, 434 (1st Dept. 2019). The issue here is the second element. As can be seen by glancing at the litigation history of this garden, should the Defendants remove the garden as a hazardous condition pursuant to their new rights under the New Lease (something they state they do not currently plan to do), the garden can be replaced as it has been twice in the past. While such a procedure would doubtless be very expensive, it can be quantified. And "the availability of quantifiable money damages precludes a finding of irreparable harm." *Kingsbridge 2005, LLC v. Wells Fargo Bank*, 226 A.D.3d 620, 621 (1st Dept. 2024). Because Plaintiff has failed to demonstrate irreparable harm, she has failed to establish a claim to a preliminary injunction.

## *Conclusion*

In sum, the Original Lease did not grant Plaintiff any rights that survived the termination of the lease according to the date stated in the lease itself and the offering plan. Therefore, any of Plaintiff's claims that rest on an alleged breach of the Original Lease after September of 2024 fails to state a valid claim and must be dismissed. But as far as her claims rest on her standing as a shareholder and allege breaches of fiduciary duty that are not predicated on a breach of the Original Lease, such claims are valid at this stage and Defendants have not offered documentary evidence that conclusively refutes the claims. Plaintiff's motion for a preliminary injunction fails

because Plaintiff has failed to establish irreparable harm beyond quantifiable money damages. Accordingly, it is hereby

ADJUDGED that plaintiff's motion is denied; and it is further

ADJUDGED that defendants' cross-motion to dismiss is granted as to the third, fourth, and sixth causes of action and is denied as to the first, second, and fifth; and it is further

ORDERED that defendant is directed to serve an answer to the complaint within 20 days after service of a copy of this order with notice of entry.

20250205163257LFRANKFFBB075E686D482CA0F1A0C2327D151C

| 2/5/2025 | | | | | | |
|----------|---|---|---|---|---|---|
| **DATE** | | | | **LYLE E. FRANK, J.S.C.** | | |
| **CHECK ONE:** | | CASE DISPOSED | X | NON-FINAL DISPOSITION | | |
| | | GRANTED | ☐ DENIED | X | GRANTED IN PART | ☐ OTHER |
| **APPLICATION:** | | SETTLE ORDER | | SUBMIT ORDER | | |
| **CHECK IF APPROPRIATE:** | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

[* 10]